672 A.2d 1328

**COMMONWEALTH of Pennsylvania**

v.

**James CAMPION, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 26, 1995.

Filed Feb. 29, 1996.

ground or theory, regardless of the reason or theory adopted by the trial court).

10

12

Donald E. Lewis, Meadville, for appellant.

Patrick M. Carey, Assistant District Attorney, Erie, for Commonwealth, appellee.

Before TAMILIA, FORD ELLIOTT and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from the judgment of sentence upon appellant's conviction of rape, statutory rape, indecent assault, and corruption of minors. We affirm.

The lower court accurately summarized the facts of the case:

The appellant was charged with sexually abusing his ten year old adoptive daughter [C.C.].[1] [footnote: The natural mother, Michelle Campion, was also charged and later convicted of endangering the welfare of a child and corrupting a minor.] He was tried on May 5, 1992, which ended in a mistrial because of a testimonial reference to his prior incarceration. He was tried again on July 6, 1992, which resulted in his conviction of all charges, but which was later reversed by the appellate court on the finding that [the] trial court improperly excluded the notation in the physician's report that the victim's hymen had been intact. (*Commonwealth v. Campion*, Nos. 1491 & 1518 Pittsburgh 1992, slip op. (Dec. 20, 1994)). On October 12, 1994, the Commonwealth filed a Motion to Declare Witness [C.C.] Unavailable. On October 31, 1994, a hearing was held on the Commonwealth's motion, and on November 3, 1994, the court granted said motion in its Opinion and Order. On November 8, 1994, the appellant was tried by a jury of his peers and was found guilty of rape, statutory rape, indecent assault and corrupting a minor. On December 6, 1994, the

---

1. Because of the nature of the offenses in the instant case, we will refer to the victim by her initials only.

court sentenced the appellant to a period of incarceration of 2½ to 5 years on corruption of minors, 10 to 20 years on rape, and 5 to 10 years on statutory rape. The indecent assault charge merged for sentencing, and all sentences ran consecutively.

On the same date the appellant filed a Notice of Appeal....

Trial Court Opinion, March 13, 1995, at 1-2. Appellant raises the following issues on appeal:

1. Whether the court erred factually in determining that C.C. was unavailable for trial, thereby allowing her prior testimony to be introduced in lieu of live testimony?

2. Whether the court's determination that C.C. was unavailable to testify was legally incorrect?

3. Whether the trial court erred in refusing appellant's request for psychological evaluation done by defense witness?

4. Whether the trial court erred by sentencing the defendant to a more severe sentence upon retrial than when he was initially sentenced?

5. Whether the trial court's sentence, which extended beyond that suggested by the sentencing guidelines for the aggravated range for the crimes for which the defendant was convicted, was vindictive and as such an abuse of discretion of the sentencing court?

We will address these issues in order.

▆▆▆▆ Appellant first contends that the trial court erred, both factually and legally, in determining that the victim was unavailable to testify at trial. The right of a defendant to confront an adverse witness is not absolute and must occasionally give way to considerations of public policy and the necessities of the case. *Commonwealth v. Melson,* 432 Pa.Super. 1, 637 A.2d 633 (1994), *appeal denied,* 538 Pa. 633, 647 A.2d 509 (1994). Where the prosecution establishes that a witness is unavailable, hearsay evidence is admissible provided that it is sufficiently reliable. *Id.* at 9, 637 A.2d at 637. "The test for unavailability is whether the prosecution has made a good faith effort to produce the live testimony of the witness." *Id.*

at 11, 637 A.2d at 638 (emphasis omitted). "The length to which the prosecution must go to produce the testimony is a question of reasonableness." *Id.*

In the instant case, the victim had testified as to the events underlying the charges, in the presence of appellant, on four prior occasions: a preliminary hearing on October 30, 1991; a criminal trial on May 5, 1992 which resulted in mistrial; a criminal trial on July 6, 1992, which on appeal resulted in the award of a new trial; and a hearing on the involuntary termination of appellant's parental rights. If called to testify in the current prosecution, the victim would have had to testify against the appellant for a fifth time. Because of these circumstances, the Commonwealth filed a motion to have the victim, who was thirteen years old at the time of the instant trial, declared unavailable. In support of its motion, the Commonwealth presented the testimony of a clinical child psychologist, James P. Schierberl, Ph.D.[2] The trial court granted the Commonwealth's motion, finding as follows:

> In this case the Commonwealth, having dealt with the witness on a number of prior occasions, being aware of the nature and severity of the allegations, and having access to her prior history and knowledge of her tender age and tenuous familial and social status, legitimately and reasonably discussed a psychological evaluation with her guardian which resulted in a subsequent referral to Dr. Schierberl. The Commonwealth's concerns were justified and the Commonwealth was bound to the outcome of the independent evaluation whatever it may have been. So because the lengths to which the prosecution must go to produce the live

---

**2.** The trial court discussed Dr. Schierberl's findings in its opinion of November 3, 1994, at pages 3–5. The trial court found, *inter alia*, that:

> Dr. Schierberl testified consistent with his report, … that to require the child to testify against her parents in this matter once again would likely push her beyond her coping capacity. Once this breakdown occurred her behavior would become aggressive, oppositional and/or delinquent, leading to disruptions and dysfunctions in her already complex and tenuous extended family relationships. This turmoil would cause a very high risk of family crisis of such acute proportions that the child would either run away or have to be placed out of her family.

*Id.* at 4.

testimony of a witness is a question of reasonableness, the Court concludes that the Commonwealth has met that standard. . . .

Wherefore, the Court accepts the testimony of Dr. Schierberl as credible, and his reports which have been admitted into evidence in their entirety, and concludes that the child witness will be severely, significantly, permanently and irreparably emotionally and/or psychologically harmed if forced to testify in this matter against the defendants, her stepfather and natural mother, for a fifth time, and declare her to be legally unavailable. The Commonwealth, therefore, may use a transcript of her prior testimony from either the criminal trial of May 5, 1992 or July 6, 1992 in lieu of live testimony.

Trial court opinion, November 3, 1994, at 6–7.

■ We have reviewed Dr. Schierbel's reports and his testimony at the hearing on the Commonwealth's motion, and we find no error in the lower court's interpretation of the doctor's findings. Similarly, we find no legal error in the trial court's determination. The admission and exclusion of evidence is within the sound discretion of the trial judge. *Commonwealth v. Jackson*, 336 Pa.Super. 609, 486 A.2d 431 (1984). In *Commonwealth v. Stasko*, 471 Pa. 373, 370 A.2d 350 (1977), the trial court admitted the videotape deposition of an eyewitness to the crime. The witness' physician had reported that she (the witness) had had numerous abdominal surgeries and opined that the strain of appearing at the trial would greatly aggravate her condition. *Id.* at 378, 370 A.2d at 352–53. Under these circumstances, the Pennsylvania Supreme Court affirmed the trial court's admission of the videotaped deposition. *Id.* at 382, 370 A.2d at 355.

In the instant case, the trial court had before it the testimony of Dr. Schierberl who opined that to require the victim to testify for a fifth time against appellant would push her beyond her capacity to cope, would endanger her personal/social adjustment and would place her at high risk of developing serious behavioral problems. Under *Stasko*, this was a sufficient basis upon which to find the child/victim unavailable.

■ We note further that since the filing of the appeal in this case, section 9, Article I of the Pennsylvania Constitution, relating to the rights of an accused in a criminal proceeding, has been amended. No longer does the accused have the right to meet the witnesses "face to face.". The amended section 9 provides that the accused has the right "to be confronted with the witnesses against him." Pa. Const. art. I, § 9 (amended 1995). An additional amendment has been added to the text of section 9, as follows:

Notwithstanding the provisions of this section, the General Assembly may by statute provide for the manner of testimony of child victims or child material witnesses in criminal proceedings, including the use of videotaped depositions or testimony by closed-circuit television.

*Id.* It is apparent that the amendment allows for flexibility in the manner in which an accused is confronted by a child witness, apparently in recognition of the special sensitivities of children in such situations.

■ The instant case involves a child who was not just a potential witness, but who had been a witness against appellant in three criminal proceedings and one civil action. The child's testimony from the prior criminal proceedings, including two trials and one preliminary hearing, was available. Such prior testimony, which possessed the guarantees of opportunity to cross-examine and reliability, is admissible when a witness is unavailable. *Commonwealth v. Melson, supra.* In this case, the trial court did not err or abuse its discretion in determining the child's unavailability for a fifth round of testimony. Thus, appellant's first two contentions on appeal must fail.

■ Appellant's next argument is that the trial court erred in refusing his request for a continuance to obtain another psychological evaluation of the victim. A trial court has broad discretion to grant or deny a request for continuance, which will not be disturbed on appeal absent an abuse of discretion. *Commonwealth v. Sal–Mar Amusements, Inc.,* 428 Pa.Super. 321, 630 A.2d 1269 (1993). The trial court discussed this issue

in its opinion of March 13, 1995, at pages 3–5. We have reviewed appellant's contentions in light of the certified record, and find no merit to them. The lower court's opinion on this issue is well-reasoned, and we rely on it for our disposition of this claim.

■ Appellant next contends that the trial court erred by sentencing him to a more severe sentence on retrial than his original sentence. Appellant also asserts that the sentence imposed, which was beyond the aggravated range of the guidelines, was vindictive and therefore an abuse of discretion by the lower court. Appellant's original sentence, imposed August 20, 1992, was for a total of twelve and one-half to twenty five years: two and one-half years for corruption of minors, and a consecutive term of ten to twenty years for rape. This sentence was vacated by the Superior Court because the panel found error in the trial court's exclusion of certain evidence at trial. The trial court did not reach the issue raised by the Commonwealth on cross-appeal, *i.e.*, whether it was error for the lower court to consider appellant's conviction for statutory rape merged with his conviction for rape for sentencing purposes. The panel noted, however, that the Pennsylvania Supreme Court has held that forcible rape and statutory rape do not merge into a single offense. *Commonwealth v. [James] Campion,* Nos. 1491 and 1518 Pgh. 1992, filed December 7, 1992 (mem.), citing *Commonwealth v. Hitchcock,* 523 Pa. 248, 565 A.2d 1159 (1989). After appellant was re-tried and again convicted, the trial court sentenced him on December 6, 1994, to an aggregate term of seventeen and one-half to thirty-five years: two and one-half years for corruption of minors, ten to twenty years for rape, and five to ten years for statutory rape, with sentences to run consecutively.

■ Appellant argues, relying on *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), that the due process clause of the Fifth Amendment precluded the trial court from imposing a greater sentence than originally imposed. In *Pearce,* the United States Supreme Court held that "vindictiveness against a defendant for having successful-

ly attacked his first conviction must play no part in the sentence he receives after a new trial." *Id.* at 725, 89 S.Ct. at 2081, 23 L.Ed.2d at 669.

> In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding.

*Id.* at 725–26, 89 S.Ct. at 2081, 23 L.Ed.2d at 670. Subsequently, the United States Supreme Court clarified the language in *Pearce,* holding that it "was never intended to describe exhaustively all of the possible circumstances in which a sentence increase could be justified." *Texas v. McCullough,* 475 U.S. 134, 141, 106 S.Ct. 976, 980, 89 L.Ed.2d 104, 112 (1986). The presumption of vindictiveness in *Pearce* may be overcome only by objective information justifying the increased sentence. *Id.* at 142, 106 S.Ct. at 981, 89 L.Ed.2d at 113. The Constitution does not require a judge to ignore objective information justifying the increased sentence. *Id.*

In the instant case, the trial court provided its reasons for the increase in sentence in its opinion of March 13, 1995, at 7–10. Those reasons include the fact that the lower court had mistakenly found that the rape and statutory rape convictions merged for sentencing purposes. As we have indicated, the Superior Court in the prior appeal noted that these offenses should not have merged for sentencing. The lower court stated its reasons for the increase in sentence at the sentencing hearing of December 6, 1994. N.T. 12/6/94, at 10–11. Certainly, these factors constitute "objective information justifying the increased sentence." *Texas v. McCullough, supra.* Thus, the due process clause was not offended by the increased sentence.

 Appellant's last contention is that the sentence imposed, which was greater than the aggravated range of the sentencing guidelines, was erroneous because the reasons

stated by the trial court for imposing the sentence were the same factors which are incorporated into the guidelines' recommended minimums. Sentencing is a matter vested in the sound discretion of the trial court whose judgment will not be disturbed on appeal absent an abuse of discretion. *Commonwealth v. Green*, 494 Pa. 406, 431 A.2d 918 (1981); *Commonwealth v. Meo*, 362 Pa.Super. 328, 524 A.2d 902 (1987), *appeal denied*, 516 Pa. 632, 533 A.2d 91 (1988). Appellants' claim challenges the discretionary aspects of his sentence. As such, appellant was required to file a separate statement of the reasons for the allowance of appeal in his appellate brief. Pa.R.A.P., Rule 2119, 42 Pa.C.S.A. Appellant has failed to do so, but appellee has not objected to this defect. Because of this failure to object and because our ability to review the matter is not precluded by appellant's failure, we will consider the claim.

"While deviation from the guidelines is permitted, the Sentencing Code requires that the court place of record its reasons for such deviation." *Commonwealth v. Byrd*, 441 Pa.Super. 351, 356, 657 A.2d 961, 963 (1995) (citations omitted). This requirement is satisfied when the judge states his reasons for the sentence on the record and in the defendant's presence. *Commonwealth v. Munson*, 419 Pa.Super. 238, 615 A.2d 343 (1992); *Commonwealth v. Dotter*, 403 Pa.Super. 507, 589 A.2d 726 (1991), *appeal denied*, 530 Pa. 639, 607 A.2d 249 (1992).

The trial court, in imposing sentence herein, stated the following on the record:

The Court has considered the Pennsylvania Sentencing Code, the Presentence Report, the Pennsylvania Guidelines on Sentencing. And the Guidelines on Sentencing for the charge of corruption suggests ranges, standard of zero to 12, aggravated at 12 to 18, and mitigated of nonconfinement.

The charge of rape, there is a mandatory minimum five-year sentence. Also the guidelines recommend standard range sentences of 36 to 60 months, 60 to 75 in the aggravated range, 27 to 36 in mitigated range. Statutory

rape, standard range is four to 12, aggravated range is 12 to 18, mitigated range is two to four.

The Court has also considered the statements of defense counsel, the defendant and the attorney for the Commonwealth. Court has considered this defendant's age, background, character and rehabilitative needs, the nature, circumstances and seriousness of the offenses and the protection of the community as well as the impact of the offenses upon the victim.

The Court would note, first of all, that the acts the defendant is accused of and has been convicted of occurred on more than one occasion over a period of approximately three years. They occurred at the time the defendant was in a caretaker position over his adopted stepdaughter who was of the tender age, ages between six and nine at the time of the offenses.

The acts have left severe, significant and probably permanent emotional and psychological scars upon the victim. And the defendant has shown absolutely, totally and completely no remorse for what he has done. The defendant also has, as the evidence showed during the trial, fled the jurisdiction when he became aware the charges were imminent. He attempted to intimidate, and did, the victim to change her story on at least one occasion. And the defendant obviously is a clear and present danger to the community at the present time.

The Court also finds that under the circumstances any lesser sentence than those imposed by this Court would diminish the seriousness of the offenses that have been committed.

N.T. 12/6/94 at 8–10. We think it is clear that the lower court's reasons incorporate additional factors other than those already implicit in the sentencing guidelines. Because the lower court stated adequate reasons for deviation from the sentencing guidelines on the record and in the defendant's

22

presence, we find no abuse of discretion in the sentence imposed.

Judgment of sentence affirmed.