Neil Hurowitz, Philadelphia, for Gerald Allan Miscovich.

Lisa Waldman, Reading, Elizabeth O. Miscovich.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

#### ORDER

PER CURIAM:

The Court being equally divided, the Order of the Superior Court is affirmed

SAYLOR, J., did not participate in the consideration or decision of this case.

CASTILLE, NIGRO and NEWMAN, JJ., would reverse the Order of the Superior Court.

■

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Danny ANDREWS, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 5, 1998.

Filed Oct. 5, 1998.

Reargument Denied Dec. 14, 1998.

John W. Packel, Asst. Public Defender, Philadelphia, for appellant.

Peter J. Gardner, Asst. Dist. Atty., Philadelphia, for the Com.

Before TAMILIA, ORIE MELVIN and BROSKY, JJ.

ORIE MELVIN, Judge:

This is a challenge to the discretionary aspects of sentencing. Appellant, Danny Andrews, was found guilty of five counts of robbery,[1] two counts of conspiracy,[2] and two counts of possession of an instrument of crime.[3] He was initially sentenced to sixty-five to one hundred thirty years in prison. After a direct appeal to the Superior Court of Pennsylvania, we remanded for re-sentencing based on the sentencing court's failure, on the record, to indicate an awareness of the applicable guideline ranges, and to provide a statement of reasons supporting deviation from the guidelines.[4] On remand, the sentencing court created a record that included the recitation of the applicable ranges of sentence and again imposed a sentence of sixty-five to one hundred thirty years in prison. This appeal follows. We affirm.

Mr. Andrews' issues on appeal are all related to the contention that the sentence imposed on his conviction was an abuse of discretion because the sentencing court allegedly exceeded the applicable guideline range and failed to state its reasons for imposing such a sentence. Mr. Andrews' brief correctly includes a separate statement, as required by the Pennsylvania Rules of Appellate Procedure, by which he attempts to demonstrate that a substantial question exists regarding the appropriateness of the sentence imposed. *See* 42 Pa.C.S.A. § 9781(b); Pa. R.A.P., Rule 2119(f), 42 Pa.C.S.A.; *Commonwealth v. Tuladziecki,* 513 Pa. 508, 522 A.2d 17 (1987).

■ The determination of whether a particular issue constitutes a substantial question must be evaluated on a case by case

1. 18 Pa.C.S.A. § 3701.

2. 18 Pa.C.S.A. § 903.

3. 18 Pa.C.S.A. § 907(a).

4. For the sake of completing the procedural history, we note that we denied appellant's motion for reconsideration of portions of our decision. *Commonwealth v. Andrews,* 434 Pa.Super. 682, 641 A.2d 1218 (1993) (unpublished memorandum). In addition, our Supreme Court denied appellant's petition for allowance of appeal. Finally, the Supreme Court of United States denied appellant's subsequent petition for certiorari.

basis. *Commonwealth v. Losch*, 369 Pa.Super. 192, 535 A.2d 115, 119 n. 7 (1987). "However, we will be inclined to allow an appeal where an appellant advances a colorable argument that the trial judge's actions were: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id.* We find that Mr. Andrews' averments advance a colorable argument that the fundamental norms underlying the sentencing process have been compromised in his case. We may therefore consider the merits of his claim.

■ First, Mr. Andrews claims that the trial court erred in not granting his request for a new pre-sentence report to be prepared and considered prior to re-sentencing. Mr. Andrews accurately notes that sentencing is a matter vested in the sound discretion of the sentencing court whose judgment will not be disturbed on appeal absent an abuse of discretion. *Commonwealth v. Campion*, 449 Pa.Super. 9, 672 A.2d 1328, 1333 (1996). Further, as we stated in *Losch, supra*, on remand: "the judge at a second sentencing hearing should reassess the penalty to be imposed on the defendant—especially where defense counsel comes forward with relevant evidence which was not previously available." 535 A.2d at 122.[5] However, Mr. Andrews' favorable adjustment to life in the penitentiary is only one of several variables upon which the trial judge should focus; there is no right to have this one factor take precedence over all others. *Losch*, 535 A.2d at 123.

■ In the case presently before us, we note that the sentencing court had available to it the pre-sentence report issued in 1992 at the time of the original sentencing. A new pre-sentence report would have advised the sentencing court of Mr. Andrews' activities while incarcerated. However, Mr. Andrews' counsel provided this information to the sentencing court. The Commonwealth conceded that Mr. Andrews had no institutional citation during his incarceration. The sentencing court indicated his willingness to accept

this as a fact and to be mindful of the information about Mr. Andrews' behavior while incarcerated. An updated pre-sentence report presumably would have provided the same information. We see no reason that an updated report would be required under the circumstances. The sentencing court took the additional information into consideration. There was no need to seek an updated pre-sentence report. Furthermore, as stated above, the fact that Mr. Andrews adjusted favorably to life in prison is only one of several variables considered by the sentencing court and there is no right to have this one factor take precedence over all others. *Id.*

Mr. Andrews' second issue is a conglomeration of allegations that the sentencing court abused its discretion and violated the sentencing code. These bases include the allegations that the sentencing court: (a) imposed sentences which were manifestly excessive; (b) unjustifiably and unreasonably deviated above the aggravated range of the Sentencing Guidelines without a sufficient identification of individualized aggravating factors, or sufficient explanation of reasons for the departure; (c) relied upon factors already considered and incorporated into the Sentencing Guideline ranges; (d) erred in imposing upon Mr. Andrews the same lengthy sentence as imposed upon his co-defendant, without distinguishing the disparity in their criminal histories; and (e) gave insufficient consideration to Mr. Andrews' potential for rehabilitation, and to the other factors required to be fully considered and balanced in the sentencing decision. These bases are interrelated and where possible, will be considered together.

In selecting an appropriate sentence, a court is required to consider the protection of the public, the gravity of the offense and the rehabilitative needs of the defendant. 42 Pa.C.S.A. § 9721(b). When imposing a sentence of total confinement, the court must consider the history, character and condition

---

**5.** The sentencing court incorrectly stated that he was required to take a retrospective view of sentencing, i.e. sentence on remand as if no time had passed. However, as discussed more fully

below, the sentencing court did not disregard the information supplied by Mr. Andrews' counsel. Instead, he accepted it as true and indicated a willingness to be mindful of the information.

of the defendant as well as the nature and circumstances of the crime. *Id.* at § 9725.

▬ Mr. Andrews claims that the sentence imposed is manifestly excessive. In determining whether a sentence is manifestly excessive, "the appellate court must give great weight to the sentencing judge's discretion, as he or she is in the best position to measure factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference." *Commonwealth v. Ellis*, 700 A.2d 948, 958 (Pa.Super.1997), *citing Commonwealth v. Anderson*, 381 Pa.Super. 1, 552 A.2d 1064 (1988). In light of the fact that the trial court is in the best position to determine an appropriate sentence, we find that the trial court did not abuse its discretion and impose a manifestly excessive sentence.

▬ Mr. Andrews next claims that the sentencing court failed to explain sufficiently it's deviation from the sentencing guidelines and gave insufficient consideration to his potential for rehabilitation. A review of the sentencing hearing transcript belies these contentions. The sentencing court specifically noted that it took into consideration the sentencing guidelines, the previous pre-sentence evaluations, the psychiatric reports, and prior record reports as well as counsel's report that Mr. Andrews had not experienced any problems while incarcerated. The sentencing court further stated its reasons for sentencing him outside the sentencing guidelines. The sentencing judge specifically opined that the Mr. Andrews was a distinct threat to the community, had not been deterred by his prior convictions and commitments, and had a long history of crimes of violence. We find that the sentencing court complied with the appropriate requirements and did not abuse its discretion in sentencing Mr. Andrews in this case.

Mr. Andrews also claims that the sentencing court relied on factors that were already considered and incorporated into the sentencing guidelines. Specifically, he argues that the existence of a prior record has already been factored into the sentencing guidelines and cannot serve to justify a sentence above the guidelines. In making this argument, Mr. Andrews again is attempting to single out and attack just one of many factors considered by the sentencing court. We do not find that the sentencing court put undue weight on this one factor or any other. Instead, it is apparent from our review of the transcript of the sentencing hearing that the judge, as noted above, took a number of factors into consideration, not just Mr. Andrews' prior record.

▬ Further, we note that a defendant's criminal history is not entirely reflected in his prior record score. *Commonwealth v. Darden* 366 Pa.Super. 597, 531 A.2d 1144 (1987). Specifically, in the case presently before us, the pre-sentence report [6] indicates that Mr. Andrews is a career offender beginning with being arrested ten times as a juvenile, resulting in two delinquency adjudications, both for robbery and related charges. As an adult, Mr. Andrews has been arrested seventeen times, resulting in six convictions for robbery, burglary or receiving stolen goods. In addition, Mr. Andrews was on parole for only one month at the time of the robberies at issue in this case, and he pleaded guilty to two other robberies committed after the offenses at issue in this case. The prior record score does not reflect either the juvenile adjudications or the robberies he committed after the instant crimes. As stated by the court in *Darden*:

When relevant sentencing factors have not been incorporated into the computation of the standard minimum range, it necessarily follows that such factors may be considered as factors to justify a sentence in the mitigated minimum range, the aggravated minimum range, or outside the guideline ranges.

*Id.* 531 A.2d at 1149. Thus, we find that the sentencing court was justified in considering

---

6. The pre-sentence report was not provided in the certified record. Although we requested the original report from the Philadelphia Probation Office, that office has failed to comply with our request. However, both parties have referred to the pre-sentence report and there is no dispute as to its contents.

these factors to sentence outside the guideline ranges.

Mr. Andrews next contends that the sentencing court erred in imposing on him the same sentence as his co-defendant without distinguishing the disparity of their criminal histories. While it is true that the co-defendant's prior record score was greater, Mr. Andrews can cite no authority that this factor alone requires the sentencing court to proportionately adjust its sentence as between the co-defendants. As mentioned above, the sentencing court has wide discretion in imposing sentence. *Campion, supra.* The disparity in prior record scores is but one factor that the sentencing court may consider. It is not dispositive.

Mr. Andrews' final issue on appeal is that principles of double jeopardy and statutory analysis require that his multiple consecutive sentences for conspiracy and possession of instruments of a crime must be vacated.[7] In making this argument, he reasons that if the three robbery incidents constituted a continuous, overlapping common scheme, then the inchoate crimes of conspiracy and possession of instruments of crime constitute a single, continuing offense such that only one sentence can be imposed. We disagree. The three robbery incidents do not constitute an overlapping common scheme. They were separate incidents that were consolidated for trial. This is why Mr. Andrews was charged with three counts of criminal conspiracy and three counts of possession of an instrument of crime. Mr. Andrews is apparently confusing two separate legal concepts: consolidation and merger. Consolidation refers to when different crimes may be tried at one proceeding. Specifically, where: "the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion." Pa. R.Crim.P. 1127A (1)(a), 42 Pa.C.S.A. The doctrine of merger, though, is a rule of statutory construction designed to determine whether the legislature intended for the punishment of one offense to encompass that for another offense arising from the same criminal act or transaction. *Commonwealth v. Anderson,* 538 Pa. 574, 650 A.2d 20 (1994)

In the case presently before this court, the criminal information reveals that the charges against Mr. Andrews involved three different robberies, of different individuals, at three different apartment buildings, over a two-day period. Mr. Andrews was charged with six counts of robbery. However, the Commonwealth charged Mr. Andrews with three counts of criminal conspiracy and three counts of possession of an instrument of a crime. Therefore, Mr. Andrews was charged with one count of conspiracy and one count of possession of an instrument of crime for each apartment building robbed. However, the charges were consolidated for the purpose of trial. This was proper because the crimes are so similar. The jury convicted Mr. Andrews on five counts of robbery, two counts of conspiracy and two counts of possession of an instrument of crime. Because robbery, conspiracy and possession of an instrument of crime do not merge for purposes of sentencing, the court was entitled to impose separate sentences on each count.

There is nothing about the concept of consolidation that invokes the concept of merger. Mr. Andrews does not describe any basis for merger or violation of double jeopardy except for the reference to the court permitting consolidation. He cites no case law, and we can find none that would support this argument. Consolidation of the offenses for the purposes of trial did not require merger of the offenses for the purposes of sentencing. There was no need to merge the offenses for the purposes of sentencing. Furthermore, there was no violation of double jeopardy because both the convictions for conspiracy and the convictions for possession of an instrument of crime were for two different offenses.[8]

Judgment of sentence affirmed.

---

7. While Mr. Andrews did not raise this issue before the trial court, it questions the legality of the sentence. The legality of a sentence is a nonwaivable issue and may be raised at any time or *sua sponte* by the court. *Commonwealth v. Moran,* 450 Pa.Super. 283, 675 A.2d 1269 (1996).

8. We are aware of the recently decided case of *Commonwealth v. Woods* (No. 3238 Philadelphia

TAMILIA, J., joins the Opinion and files a Concurring Statement.

BROSKY, J. files a dissenting opinion.

TAMILIA, Judge, concurring:

I join the majority Opinion as it correctly states and applies the law, however, I write separately only to observe that justice could have been served without going outside the guidelines. The guidelines have been carefully designed to fulfill the legislative intent for balanced sentencing on an individual basis and geographically, while giving appropriate weight to the nature of the crime. The vast majority of sentences are in compliance with the guidelines, which allow considerable judicial discretion. Should an excessive number of sentences exceed the guidelines to the degree there is no likelihood of release before death, prisons, which are becoming a limited resource, will serve as repositories for infirm and incapacitated elderly patients in their declining years. Already, the cost of incarceration in California exceeds the cost of education. The graying of our prison population ultimately will result in the length of sentences being determined by prison officials rather than the courts when the cost becomes unbearable. Careful application of and adherence to the guidelines can mitigate this foreseeable concern.

I am also cognizant of the thoughtful dissent by our esteemed colleague, Judge John G. Brosky, in which he cites two cases, which I authored, to support his position. *Commonwealth v. Simpson*, 353 Pa.Super. 474, 510 A.2d 760 (1986), *Commonwealth v. Parrish*, 340 Pa.Super. 528, 490 A.2d 905 (1985). Unfortunately, in the intervening years since those Opinions were published, our Supreme Court has hardened its position on sentencing, and sociological or philosophic arguments are not sufficient to overrule a trial judge who has gone outside the guidelines in an otherwise legal sentence if he gives adequate reasons for doing so.

BROSKY, Judge, dissenting.

Appellant was convicted of five counts of robbery, two counts of conspiracy and two counts of possession of an instrument of crime relating to two armed robberies occurring at two apartment building complexes in Philadelphia in a single afternoon. The sentencing court, perhaps understandably outraged, exasperated and frustrated by appellant's continuing involvement in criminal conduct despite numerous previous encounters with the criminal justice system, including periods of incarceration, threw the proverbial "book" at appellant and imposed the maximum sentences allowed by law on all charges and ordered them to be served consecutively. All told, appellant was sentenced to serve a total period of 65 to 130 years of imprisonment. I understand that appellant has engaged in reprehensible behavior and does not inspire a lot of hope for successful rehabilitation, particularly in the short run. Nevertheless, at some point it becomes necessary to take a step backwards, observe the larger picture in as detached a manner as possible and say "enough is enough." The imposition of a 65 to 130 year sentence for appellant's participation in two holdups is in effect a "life sentence." A life sentence in Pennsylvania is imposed for first degree murder and, as such, the sentencing court's action could be thought of as equating appellant's conduct with cold-blooded murder.

I find the present case too similar to our decision rendered 12 years ago in *Commonwealth v. Simpson*, 353 Pa.Super. 474, 510 A.2d 760 (1986), to ignore. In the respect I

---

1996) cited by the dissent. However, these two cases are distinguishable. In *Woods*, the defendant was convicted of two counts of carrying a firearm on a public street (18 Pa.C.S.A. § 6108) because there were two assaults involved. We reversed recognizing that there was not a break in possession of the weapon between the two assaults. In fact, Mr. Woods remained in his car, fleeing from a hit and run accident and assaulted each victim to facilitate his flight. The entire incident was one continuing event. In the instant case, Mr. Andrews was convicted of two separate counts of robbery, in two separate apartment complexes, albeit on the same day. In each of these robberies, he employed a handgun to facilitate the crimes. Therefore, the Commonwealth sought convictions for possession of an instrument of crime associated with each of these incidents. 18 Pa.C.S.A. § 907(a). We find it possible for the trial court to conclude that these two robberies were two separate unrelated events that each began when Mr. Andrews entered the different apartments and ended when he left.

consider most relevant the two cases are quite similar, except that the sentence imposed here is essentially twice as harsh as the one imposed in *Simpson*. In *Simpson* we dealt with the imposition of a total of 30 to 60 years imprisonment for six counts of robbery, four counts of conspiracy and six counts of possessing an instrument of crime which arose from six robberies of two appliance stores in a five month period. In vacating the sentence we stated that while considering the gravity of the offense and the need for society to be protected it was also incumbent upon the sentencing court to "weigh the effect of a cumulative minimum sentence of thirty years, which would take a relatively young man through the prime of his life for a term twice as long as the average life sentence,..." We further noted that criminal conduct tends to diminish in offenders as they age and that the imposition of a thirty year sentence "effectively *removes appellant from society for his potential working life,* precluding the possibility of his ever becoming a contributing member of society." If the above is true of a thirty year sentence then it is doubly true of a sixty-five year sentence.

It could be argued that appellant has a significantly worse criminal history than did Simpson prior to his crime spree, which is true. Nevertheless, when dealing with the imposition of a sixty-five year minimum sentence the sheer length of the sentence overwhelms such differences. A defendant's criminal history may be highly relevant when deciding whether to impose a ten-year sentence or a fifteen-year sentence. But when considering locking someone up for life, for all practical purposes, that criminal history is less significant than the overriding question of whether a *de facto* life sentence should be imposed for participation in two robberies. Conversely, it could be argued in appellant's behalf that Simpson participated in six separate robbery episodes whereas here the appellant was convicted of participation in two. The fact that there were five victims, thereby allowing the charging of five robberies, does not change the essential nature of the criminal conduct appellant engaged in. It merely provided a vehicle whereby the Commonwealth and the sentencing court could effec-

tively put appellant away for life. Presumably, if appellant had held up a transit bus with forty passengers he would have received 400 years in prison. Indeed, the sentence imposed here smacks of a judicially imposed "three strikes" then life type of sentence even though our legislature has not seen fit to adopt such a measure.

Although apparently out of vogue there was a time, shortly after the imposition of the sentencing guidelines, where this court took to heart its obligation to review sentences rather than to blindly defer to the sentencing court, and was willing to vacate a sentence for no other reason than because the sentence was deemed manifestly excessive by the panel reviewing the sentence. *Simpson* was such a case as was *Commonwealth v. Parrish*, 340 Pa.Super. 528, 490 A.2d 905 (1985), and *Commonwealth v. Smart*, 387 Pa.Super. 518, 564 A.2d 512 (Pa.Super.1989). Since these cases remain good law I would vacate the sentence imposed and remand for resentencing upon their authority.

I would note my agreement with the general expression of my concurring colleague, Judge Tamilia as set forth in his Concurring Statement. Nevertheless, I do not believe that the arguments I advance are merely sociological or philosophical. The Superior Court exists for the purpose of reviewing actions of the trial court, just as the Supreme Court, in large part, exists for the purpose of reviewing actions of this court. There are many times when this court takes action merely because the assumed collective wisdom of a panel of three judges is deemed to be greater than the wisdom of a single judge. There is nothing inherently wrong with this aspect of appellate review. Concepts of reasonableness permeate decisions relating to child custody matters, contract interpretations and search and seizure issues, to name a few. When reviewing these cases we will routinely vacate or reverse the judgment of the lower court based upon nothing more than that our collective sense of reasonableness differs from that of the lower court. I see no reason that the same approach should be abdicated when it comes to sentencing matters.

Under the current sentencing scheme judges are supposed to not only refer to the sentencing guidelines but to adhere to them. This does not mean that sentences cannot be imposed in the aggravated ranges of the guidelines or even outside the guidelines where circumstances warrant. However, there are supposed to be valid reasons for sentencing in the aggravated or mitigated ranges or for going outside the guidelines altogether. If this court is not empowered to review the sentencing court's reasons and disregard them if considered invalid or insufficient then, from a practical standpoint, there is no appellate review and the guidelines become essentially a voluntary exercise.

In *Commonwealth v. Smart*, 387 Pa.Super. 518, 564 A.2d 512 (1989), while writing for a majority of a panel of this court, I indicated that "[a]ppellate review of sentencing matters would become a mockery and a sham if all sentences were routinely affirmed under the guise of discretion of the trial court." *Id.*, 564 A.2d at 514. Now, more than eight years later, I dare say that this is precisely the state of appellate review of sentencing matters in this Commonwealth. Judge Tamilia states that a vast majority of sentences are in compliance with the guidelines. Although I would like to believe this to be the case, I am not so sure. But I am sure that numerous sentences are routinely affirmed by this court that are outside the guidelines, or are maximum sentences, despite the fact that the circumstances of the case are not out of the realm of the ordinary for the type of crime committed.

I further agree with Judge Tamilia that the guidelines are designed to give "appropriate weight to the nature of the crime." As I observed in *Commonwealth v. Gause*, 442 Pa.Super. 329, 659 A.2d 1014 (1995), the guidelines take into account the inherent egregiousness of the crime in question by calling for "increasingly greater sentences for increasingly egregious conduct." *Id.*, 659 A.2d at 1016. Each offense is assigned an offense gravity score which, generally speaking, sets forth the appropriate period of incarceration for that particular offense. We must assume that the sentencing commission understood what a robbery was when it assigned an offense gravity score for robbery, or what a rape was when it assigned an offense gravity score for that particular offense.

As I further noted in *Gause*, when the court sentences outside the guidelines for conduct which is not unusual for the crime committed, in reality it reflects the sentencing court's rejection of the legislature's and sentencing commission's sense of appropriate punishment and the substitution of its own. Although when this practice occurs there are likely to be individuals in full agreement with the sentence handed down, nevertheless, this is contrary to the purpose behind imposition of the guidelines in the first place. As we noted in *Commonwealth v. Chesson*, 353 Pa.Super. 255, 509 A.2d 875 (1986), the guidelines were formulated with the purpose of standardizing sentences and diminishing the disparity in sentencing that often developed from county to county and even courtroom to courtroom. Lest the impact of this goal escapes anyone, implementation of this policy necessarily requires the reining in of sentencing discretion, a matter that was recognized by both the legislature in passage of the guidelines and this court back in 1986. *See, Chesson, for discussion.*

For the above reasons, I believe that not only are we empowered to reject sentences for manifest "excessiveness," I also believe we are duty bound to do so as long as the guidelines remain in effect. If the legislature sees fit to repeal the sentencing guidelines and restore maximum discretion to the sentencing courts then this court's current reviewing practices as it relates to sentences will be justified. However, until such time I believe we are abdicating our responsibility as an appellate court by routinely affirming sentences like that presented here under the guise of deference to sentencing discretion.

Lastly, I also believe it was error to sentence appellant for two counts of conspiracy and two counts of possessing an instrument of crime. Although ideally a challenge to the imposition of multiple sentences for what is essentially one crime should be made through a sufficiency of the evidence challenge, there is precedent for vacating sentences via a challenge to the sentence. It is

well established that conspiracy is an inchoate crime and the number of conspiracies depends upon the number of conspiratorial agreements reached not the number of crimes committed within a conspiratorial arrangement. In the present case there is nothing that suggests that the commission of the crimes resulted from separate conspiratorial agreements. Indeed, given the short time between robberies it strains logic to suggest that both robberies were not the result of a single criminal conspiracy. In *Commonwealth v. Perez*, 381 Pa.Super. 149, 553 A.2d 79 (1988), we vacated a sentence for conspiracy upon appeal even though the appellant had pled guilty to two conspiracies. We noted that there was nothing in the record, nor anything offered by the Commonwealth, to suggest that there were two separate conspiracies. The same logic applies here. Nothing proffered by the Commonwealth, in its brief, or in its petition for consolidation, supports a conclusion that there was more than one criminal conspiracy. Consequently, I would be inclined to reverse one of the sentences for criminal conspiracy.

The above rationale is even stronger in the context of the possession of an instrument of crime context. The offense charged relates to the **possession** of an instrument of crime with the intent to employ it criminally. Since appellant did in fact employ a handgun criminally, that aspect of the offense is established. However, the Commonwealth's practice of tying this offense to the number of robberies is not supported by the language of the statute. What the offense prohibits is the possession of the weapon with criminal intent. Possession is a continuing status. There is nothing to indicate that appellant's possession of the handgun was interrupted at any time during the commission of the offenses in question. As such, although appellant may have employed the handgun in two separate robberies there is nothing to suggest that he did not possess the gun continuously throughout the relevant time frame. Consequently, he committed but one offense of weapon possession.

I would note that under a similar scenario this very panel vacated a second sentence for a possession of a weapon offense in *Common-*

*wealth v. Woods*, 710 A.2d 626 (Pa.Super.1998). The majority attempts to distinguish *Woods* from the present case but the point we made in *Woods* has not been refuted. In *Woods* we stressed that possession of weapons offenses were not tied to the commission of an offense with the weapon and, in fact, a violation would occur even if no crime were actually committed with the weapon. The controlling factor, as stated in *Woods*, was the possession of the weapon. We concluded in *Woods* that since there was no evidence that the possession of the weapon was interrupted Woods had committed only one possession offense, even though there were two separate assaults. The majority has not presented a meaningful distinguishing factor from *Woods* and, therefore, principles of *stare decisis* dictate that the same result should be reached here.

For the above reasons, I believe the sentence should be vacated as manifestly excessive and remanded for resentencing. Further, I believe that the sentences for one count of conspiracy and one count of possessing an instrument of crime should be reversed as illegal.