J-S23041-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| SHANE LUIS SANTIAGO | : | |
| | : | |
| Appellant | : | No. 2527 EDA 2017 |

Appeal from the Judgment of Sentence July 5, 2017
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0004491-2012

BEFORE:   SHOGAN, J., NICHOLS, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                **FILED MAY 07, 2018**

Appellant Shane Luis Santiago appeals from the judgment of sentence entered in the Court of Common Pleas of Chester County on July 5, 2017, at which time he was sentenced to an aggregate term of six and one half (6 ½) years to thirteen (13) years in prison following his open guilty plea to two (2) counts of possession with intent to deliver (PWID)(marijuana), one (1) count of criminal conspiracy, five (5) counts of animal fighting, and one (1) count of endangering the welfare of children.[1]  Appellant's counsel also has filed a brief

---

[1] 35 Pa.C.S.A. § 780-113(a)(30); 18 Pa.C.S.A. §§ 903(c), 5511(h.1)(3), and 4304(a)(1), respectively.  Relevant to our discussion herein is the mandatory minimum sentence of two (2) years to four (4) years Appellant received for PWID within a school zone pursuant to Section 6317 of the Crimes Code, 18 Pa.C.S.A. §§ 101-9402.

---

pursuant to ***Anders v. California***, 386 U.S. 738 (1967) and its Pennsylvania counterpart ***Commonwealth v. Santiago***, 602 Pa. 159, 978 A.2d 349 (2009) (hereinafter "***Anders*** Brief") together with a petition to withdraw as counsel.[2] Following our review, we grant counsel's petition to withdraw and affirm Appellant's judgment of sentence.

Appellant did not file a direct appeal of his sentence with this Court; however, he filed a timely PCRA petition on July 28, 2014. Therein, Appellant argued the United States Supreme Court's decision in ***Alleyne v. United States***, 133 S.Ct. 2151 (2013) rendered unconstitutional the mandatory minimum sentence he had received pursuant to 18 Pa.C.S.A. § 6317 for PWID within a school zone. A panel of this Court agreed and determined his case was identical procedurally to and, therefore, controlled by our recent decision in ***Commonwealth v. Melendez-Negron***, 123 A.3d 1087 (Pa.Super. 2016) (holding the mandatory minimum sentencing scheme set forth in Section 9712.1 and under which the appellant had been sentenced was unconstitutional in light of ***Alleyne***). Consequently, we determined Appellant's sentence was illegal because ***Alleyne*** had rendered Section 6317 facially unconstitutional and remanded "for resentencing without the consideration of the mandatory minimum sentence in Section 6317." ***Commonwealth v.***

---

[2] ***Anders*** set forth the requirements for counsel to withdraw from representation on direct appeal, and our Supreme Court applied ***Anders*** in ***Santiago***.

*Santiago*, No. 3449 EDA 2014, unpublished memorandum at 5 (Pa.Super. filed December 11, 2015).

Following remand, a hearing was held on July 5, 2017, at which time the Commonwealth requested that the trial court resentence Appellant to the sentence he had received previously. N.T., 7/5/17, at 6. The trial court indicated that while it was aware Appellant had been doing fairly well in prison, it had found particularly concerning and "shocking" the description of the dog fighting that Appellant had, himself, provided to police which had been incorporated in the Affidavit of Probable Cause. *Id*. at 6-8, 12. The trial court expressed that it was "looking at the entire package of all the charges rather than breaking it down charge by charge" and considering whether "the original sentence [was] fair, not putting a mandatory[.]" *Id*. at 12. Specifically, the trial court highlighted that:

> [He] talks about killing ten dogs, the way they killed them, the way he did it and saying if the dog didn't perform, basically do his job, the dog would get killed because the dog's job was to fight. And he did that in a house with small children. And it's not as [the prosecutor] says, or what [Appellant] says, it's not explained culturally. It's a horrifically cruel thing to do.
> ***
> [W]hen they go into [Appellant's] house, they got the things commonly used to fight pit bulls, bite sticks, heavy chains, treadmills, coats cable tied into a noose, electric cords, one end cut off with blood on it, car jumper cables, dog hairs on one of the contacts. Your statement to the police is if a pit bull fighting dog stops fighting during a match, which you described as quit or quitting, the dog that quit would have to be killed.
> You say there are multiple ways to kill a dog, including shooting the dog, drowning the dog, hanging the dog or electrocuting the dog. [Appellant] stated that he personally killed at least ten dogs by hanging or electrocution. He described

- 3 -

manually electrocuting a dog by using a car battery jumper cables by placing one jumper cable on the dog's tongue and the other jumper cable on the dog's genitalia, and plugging the cut portion into a household socket multiple times until the dog died. And you're doing that while you have five children in your house, ages three to fifteen years of age.

I can't get into Judge Gavin—if I had this case cold that day, you would get more than six and a half to thirteen when you put aside the marijuana, because it's just that outrageous. And it's not explained by culture. There is an aspect that is sadsm here, that there's ways to kill things. And you're equating it, in a sense, to like farm animals. They have a job and they don't do the job. But if you're sticking something into his genitalia and plugging it in and shocking it, that's not on, that's not cutting something's throat simply because it's not an effective breeder or doing whatever. That's simply cruel. And that cruelty part of the case is what sticks in my groin.

*Id*. at 8, 27-28. The court also remarked that the prior sentencing court ran some of Appellant's sentences concurrently and deemed the overall sentence to be appropriate. *Id*. at 23.

After further discussion including references to the presentence investigation (PSI) report, the profound affect the animal abuse had had upon Appellant's children, especially his youngest child, and Appellant's numerous write-ups while in prison, *id*. at 28-36, the trial court ultimately resentenced appellant to an aggregate term of six and one half (6 ½) years to thirteen (13) years in prison with credit for time served from December 5, 2015, and without consideration of the mandatory minimum sentence in 18 Pa.C.S.A. § 6317. *Id*. at 38. Appellant filed a timely notice of appeal on August 2, 2017, and on August 21, 2017, he filed his Concise Statement of Matters Complained of on Appeal wherein he raised six claims of error. The trial court filed its

Opinion Pursuant to Pa.R.A.P. 1925 on October 23, 2017, wherein it addressed each of those claims.

On February 20, 2018, counsel filed his Motion Seeking Permission to Withdraw as Counsel and *Anders* Brief with this Court. Appellant filed no further submissions either *pro se* or through privately-retained counsel following counsel's filing of the petition to withdraw. The Commonwealth filed a brief with this Court on March 22, 2018.

Prior to addressing the questions raised on appeal, we must first resolve counsel's petition to withdraw. *Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa.Super. 2007) (*en banc*). *See also Commonwealth v. Rojas*, 874 A.2d 638, 639 (Pa.Super. 2005) (citation omitted) (stating "[w]hen faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw."). There are procedural and briefing requirements imposed upon an attorney who seeks to withdraw on appeal pursuant to which counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the defendant; and 3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*) (citation omitted). In addition, our Supreme Court in *Santiago* stated that an *Anders* brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, *supra* at 178-79, 978 A.2d at 361. Counsel also must provide the appellant with a copy of the *Anders* brief, together with a letter that advises the appellant of his or her right to "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court's attention in addition to the points raised by counsel in the *Anders* brief." *Commonwealth v. Nischan*, 928 A.2d 349, 353 (Pa.Super. 2007) (citation omitted). Substantial compliance with these requirements is sufficient. *Commonwealth v. Wrecks*, 934 A.2d 1287, 1290 (Pa.Super. 2007).

Herein, counsel contemporaneously filed his Motion Seeking Permission to Withdraw As Counsel and *Anders* Brief. In his petition, counsel states that after a careful and conscientious examination of the record he has determined that no meritorious issues exist and an appeal herein is wholly frivolous. *See* Motion Seeking Permission to Withdraw as Counsel at ¶¶ 3-4. The petition further explains that counsel notified Appellant of the withdrawal request and forwarded a copy of the *Anders* Brief to Appellant together with a letter explaining his right to proceed *pro se* or with new, privately retained counsel to raise any additional points or arguments that Appellant believed had merit.

*See id.* at 4-5; *see also Anders* Brief, "Letter to Appellant" attached as Appendix "D." The petition indicates that a copy of the Motion to Withdraw as Counsel, *Anders* Brief, and notice letter were served on Appellant and these documents correctly inform Appellant of his rights.

In the *Anders* Brief, counsel provides a summary of the facts and procedural history of the case with citations to the record, refers to evidence of record that might arguably support the issues raised on appeal, provides citations to relevant case law, and states his reasoning and conclusion that the appeal is wholly frivolous. *See Anders* Brief at 14-32. Accordingly, counsel has complied with all of the technical requirements of *Anders* and *Santiago*.

As Appellant filed neither a *pro se* brief nor a counseled brief with new, privately-retained counsel, we proceed to examine the issues of arguable merit identified in the *Anders* Brief. Therein, counsel presents the following issues verbatim:

1.  Did the re-sentencing court improperly consider the case docketed at No.: CP-15-CR-0000322-2013 when it resentenced Appellant?

2.  Did the resentencing court improperly calculate Appellant's offense gravity score and prior record?

3.  Was the aggregate sentence imposed unreasonable?

4.  Did the re-sentencing court improperly think it could increase Appellant's sentence?

5.  Did the re-sentencing court fail to consider the facts and circumstances of Appellant's case?

6.      Is Appellant's sentence illegal because the sentencing court sentenced Appellant over the guidelines and failed to specify on the record a finding of any aggravating factors?

**Anders** Brief at 13-14 (unnecessary capitalization omitted). In its Rule 1925(a) Opinion, the trial court disposed of the aforementioned issues as follows:

> In his first issue, [A]ppellant claims that the court improperly resentenced him on both cases, even though the Superior Court only reversed the sentence as it pertained to the PWID charges. While it is true that the Superior Court found an error with the sentence appellant received for the PWID charges, it cannot be said that the Court "remanded only the present matter [4491-12] for resentencing." See Concise Statement of Matters Complained of on Appeal. Appellant took issue with the entire sentencing scheme and appealed both cases. He did this because the court considered both cases together and came up with a comprehensive sentence for all charges to which appellant pled guilty. When the Superior Court issued its ruling, the entire sentencing scheme was affected and both cases were remanded back for resentencing. Accordingly, it was both proper and necessary to consider both cases during the resentencing hearing.
>
> The court notes that both docket numbers appear on the Superior Court's decision, confirming that the Court's ruling applied to both cases. Also, in the Court's Memorandum, the Court discussed all charges from both docket numbers and the aggregate sentence together, further evidencing that the remand applied to both cases. In addition, a review of the transcript of the resentencing hearing shows that the court, the prosecutor, and [A]ppellant's attorney discussed the cases together, as it was clear that [A]ppellant had to be resentenced on all charges.
>
> Moreover, even if it is found that the court should not have resentenced appellant on the charges under docket number 322-13, he suffered no prejudice as a result of the resentencing, as he received the same sentence that he received previously for those charges.
>
> Appellant next argues that the resentencing court improperly calculated the appellant's Prior Record Score ("PRS") as a five (5), when the score should be a three (3), and improperly

calculated appellant's Offense Gravity Score ("OGS") as a five (5) when that also should have been a three (3). (Appellant's counsel states, however, that the PRS may be a four (4). See Concise Statement of Matters Complained of on Appeal.) The following exchange occurred at the resentencing hearing:

> MR. NORCINI: The guidelines at the time with an OGS of three, I believe he had a prior record score of three at the time, so the guidelines would be RS to twelve. And that I think is the count to which the Superior Court sent the case back for resentencing.
> MR. BARRAZA: He had a prior record score of five.
> MR. NORCINI: I'm sorry.
> MR. BARRAZA: That places the guidelines at twelve to eighteen months.
> MR. NORCINI: I'm sorry. I didn't mean to misstate that.

N.T. 7/5/17, p. 5. The prosecutor then laid out all of [A]ppellant's prior convictions that were considered when determining [A]ppellant's PRS. They included a 1996 conviction for possession of a controlled substance, a 1997 summary conviction for disorderly conduct, a 1998 conviction for possession of a controlled substance, a 1998 conviction for possession with intent to deliver, a 2000 conviction for possession with intent to deliver, a 2002 conviction for theft by unlawful taking, and a 2006 conviction for terroristic threats. No objections were made at the time. Accordingly, he is not permitted to raise one now. It should be noted that during the prior sentencing hearing, defense counsel at that time also agreed that the PRS and OGS were correct. See N.T. 11/13/13, pp. 8-10. See also, prior counsel's Memorandum in Aid of Sentencing. In addition, for the reasons discussed below, [A]ppellant's new sentence is proper since the sentence received was not greater than the lawful maximum.

Appellant next argues that the aggregate sentence imposed was unreasonable as the sentence on Count One (1) is above the standard range of the Sentencing Guidelines and was imposed consecutive to the sentence on Count Two (2). 42 Pa.C.S.A. §9721 sets forth the types of sentences that can be imposed by a court in this Commonwealth. It also indicates the factors that should be taken into account when determining the appropriate punishment. The statute states in relevant part:

(a) General rule. --In determining the sentence to be imposed the court shall, except as provided in subsection (a.1), consider and select one or more of the following alternatives, and may impose them consecutively or concurrently:
(1) An order of probation.
(2) A determination of guilt without further penalty.
(3) Partial confinement.
(4) Total confinement.
(5) A fine.
(6) County intermediate punishment.
(7) State intermediate punishment.

*****

(b) General standards. - In selecting from the alternatives set forth in subsection (a) the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The court shall also consider any guidelines for sentencing adopted by the Pennsylvania Commission on Sentencing and effect pursuant to section 2155 (relating to publication of guidelines for sentencing). In every case in which the court imposes a sentence for a felony or misdemeanor, the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed. In every case where the court imposes a sentence outside the sentencing guidelines adopted by the Pennsylvania Commission on Sentencing pursuant to section 2154 (relating to adoption of guidelines for sentencing) and made effective pursuant to section 2155, the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines. Failure to comply shall be grounds for vacating the sentence and resentencing the defendant.

42 Pa.C.S.A. §9721. It should be noted that in this Commonwealth:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be

disturbed on appeal absent a manifest abuse of that discretion. However, the sentencing court must state its reasons for the sentence on the record, which in turn aids in determining "whether the sentence imposed was based upon accurate, sufficient and proper information. . . ." When imposing sentence, a court is required to consider "the particular circumstances of the offense and the character of the defendant." In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation. "It must be demonstrated that the court considered the statutory factors enunciated for determination of sentencing alternatives, and the sentencing guidelines." Additionally, the court must impose a sentence which is "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and the community, and the rehabilitative needs of the defendant." Where the sentencing judge had the benefit of a pre -sentence report, however, it will be presumed that he "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors."

Com. v. Dotter, 589 A.2d 726, 730 (Pa. Super. 1991) (citations omitted). See also, Com. v. Andrews, 720 A.2d 764 (Pa. Super. 1998) and Com. v. Lawson, 650 A.2d 876 (Pa. Super. 1994).

In the instant case, [ ] [A]ppellant was correctly sentenced in accordance with 42 Pa.C.S.A. §9721 and existing case law. The court took into account all relevant factors, including all the information provided in the presentence investigation report, and considered the protection of the public, the gravity of the offense, and the rehabilitative needs of the appellant in order to determine an appropriate sentence. Appellant's prior criminal record, the failure of all prior efforts at rehabilitation, the seriousness of the crimes charged, and all other factors led to the conclusion that appellant should have been sentenced to an aggregate jail term of 6 ½ to 13 years of incarceration.

The court notes that a sentence for a particular crime can be in the mitigated range, standard range, or aggravated range. It can also be above the aggravated range, as long as the sentence is not greater than the statutory maximum for that crime. The court is also permitted to run sentences concurrently or consecutively. In order to fashion an appropriate sentence in

this case, most of [A]ppellant's sentences were in the standard range while one was above that. In addition, some sentences were run consecutively, while others were run concurrently. Further, [A]ppellant received no penalty for some of his crimes. All of the sentences received, however, were well within the statutory limits. In addition, during the resentencing hearing, the court fully explained its reason for sentencing appellant the way it did. See N.T. 7/5/17. After properly applying all relevant factors, the court decided on an appropriate sentence for the crimes to which [A]ppellant pled guilty.

Appellant next argues that the resentencing court improperly thought that it could increase [A]ppellant's sentence at his resentencing. This argument fails for two reasons. First, the court did not increase [A]ppellant's sentence. To the contrary, he received the same sentence that he received previously. Second, even if the sentence was increased, the court is permitted to do so. When a matter is remanded back for resentencing, the slate is wiped clean and the court is permitted to evaluate the matter as if there was no prior sentencing hearing. The new sentence may be longer than the original sentence, shorter than the original sentence, or the same as the original sentence. As long as the court does not abuse its discretion, the sentence should be upheld. Even though [A]ppellant was hoping for a reduced sentence, the court did not abuse its discretion for failing to sentence him to a shorter period of incarceration.

Appellant also argues that the court improperly failed to consider the facts and circumstances of the case when it resentenced [A]ppellant. He also claims that the court illegally resentenced [A]ppellant as the sentence he received on Count One (1) is over the guidelines and the court failed to specify on the record a finding of any aggravating factors. Again, these contentions are contradicted by the record. A review of the transcript from the resentencing hearing shows that the court took into account all relevant factors when determining an appropriate sentence and it explained specifically why [A]ppellant received the sentence he received. The court questioned [A]ppellant about misconducts he received while he has been in prison. N.T. 7/5/17, pp. 18-22, 25-26. It also carefully considered the nature of the crimes to which [A]ppellant pled guilty, which are particularly egregious. N.T. 7/5/17, pp. 27-31, 34-38. He admitted to killing at least ten (10) dogs by hanging or electrocution. He would electrocute a dog by using jumper cables. He would place one jumper cable on the dog's tongue and the other on the dog's genitals. He would then plug it into a household socket multiple

times until it died. His children, ages three (3) and fifteen (15) were in the house when this was going on. One of the children saw appellant hit a dog with a sledge hammer and she could hear screaming coming from inside the house. She is now permanently emotionally scarred as a result of what she saw and heard. N.T. 7/5/17, pp. 27, 30.

With regard to the drug cases, on July 11, 2012, [A]ppellant delivered 1/8 ounce of marijuana to a confidential informant. The delivery occurred in a playground where his children were playing. On July 17, 2012, appellant delivered 2.4 grams of marijuana from his home to a confidential informant. His children were present in the home when the transaction occurred.

In addition to evaluating [Appellant's] conduct while in prison and the particularly cruel facts of these cases, the court addressed the protection of the public, the gravity of the offenses and the rehabilitative needs of [ ] [A]ppellant. N.T. 7/5/17, pp. 34-38. Only after considering all circumstances surrounding this case and applying all relevant factors, the court sentenced [A]ppellant to an appropriate sentence of 6 ½ to 13 years in prison.

Trial Court Opinion, filed 10/23/17, at 2-7.

In light of the foregoing and following our independent review of the merits of the case where we make an independent judgment deciding whether the appeal is in fact wholly frivolous, *see **Commonwealth v. Wrecks***, 931 A.2d 717, 721 (Pa.Super. 2007), we have found no indication of non-frivolous issues. The record supports the trial court's rationale, and we would have no need to disturb it. Therefore, we grant counsel's petition to withdraw and affirm appellant's July 5, 2017, judgment of sentence.

Petition to withdraw as counsel granted. Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/7/18</u>