J-S21006-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| JABRIEL ALLEN | : | |
| Appellant | : | No. 1830 EDA 2020 |

Appeal from Judgment of Sentence entered August 28, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002410-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| JABRIEL ALLEN | : | |
| Appellant | : | No. 1831 EDA 2020 |

Appeal from Judgment of Sentence Entered August 28, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000395-2019

BEFORE:  BOWES, J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED JULY 28, 2021**

Jabriel Allen appeals from the judgment of sentence of twenty-two to forty-four years of imprisonment, imposed following non-jury convictions of third-degree murder, possession of an instrument of a crime ("PIC"), possession of a firearm by a prohibited person, firearms not to be carried

---

[*] Retired Senior Judge assigned to the Superior Court.

without a license, and carrying a firearm on a public street in Philadelphia.[1] We affirm.

The following facts are relevant to our review. On the evening of February 28, 2018, as Emmanuel White entered the lobby of an apartment building located at 4445 Holden Street, Philadelphia, Pennsylvania, Devoune Handy struck him over the head with his cane multiple times, forcing him to the ground. N.T. Trial, 3/3/20, at 10-15. Appellant was present in the lobby when the altercation occurred, and he eventually intervened to separate the two men, who had days earlier been involved in a family disagreement. *Id*. at 11, 66-68. Handy later testified that he did not know Appellant at the time, but the videotape showed Appellant shaking Handy's hand when he entered the lobby.

White stood up and Handy attempted to shake his hand, suggesting that the fight was over. *Id*. at 40. White refused the handshake and, instead, produced a knife and chased Handy toward the door exiting the lobby. *Id*. at 40-41. Upon catching up with Handy, White stabbed him twice, in the shoulder and in his flank. *Id*. at 41-42. Handy ran into the parking lot outside of the building with White in pursuit, and then collapsed in the grass. *Id*. at

_____

[1] Appellant purported to appeal from the judgment of sentence and the September 9, 2020 order denying post-sentence motions. The appeal properly lies from the August 28, 2020 judgment of sentence, made final by the order denying post-sentence motions. *Commonwealth v. Shamberger*, 788 A.2d 408, 410 n.2 (Pa.Super. 2001) (*en banc*). We have amended the caption accordingly.

42-43. As White stood over Handy with the knife in his hand, Appellant drew a .40 caliber Smith and Wesson handgun and fired two shots at White's back. *Id*. at 74-75. White ran, and Appellant chased him through the parking lot, shooting him five more times in the back. *Id*. at 75-78. White collapsed with the knife still in his hand and later succumbed to his wounds. *Id*. at 81. Handy survived the stabbing.

Immediately after the shooting, Appellant pulled up the hood of his sweatshirt, ran back into the lobby of the apartment building, and exited through the fire door. *Id*. at 78-79. Two days later, he traded the handgun used in the shooting for a different firearm. *Id*.

Officer Barry Stewart of the Philadelphia Police Department responded to the scene shortly after the shooting, observed Handy lying on the ground bleeding, and arranged for transport for immediate medical attention. *Id*. at 123-24, 130. Handy later talked to investigators about the incident and pled guilty to simple assault for his attack upon White. *Id*. at 132.

Officers Shannon Shippey and Alex Breyer of the Philadelphia Police Department were stationed near the Holden building at the time of the incident. *Id*. at 112-13. The officers heard gun shots and immediately went to the scene. *Id*. at 113-14. Upon arrival, the officers saw White lying on the ground with the knife still in his hands. *Id*. at 114-16. Officer Breyer removed the knife from White's hands and transported him to a nearby hospital for

- 3 -

treatment of multiple gunshot wounds, but White was later pronounced dead. *Id*. at 116-17, 120-21.

Catena Grey, a security guard stationed in a booth in the lobby of the Holden building, was on duty at the time of the shooting. N.T. Trial, 3/2/20, at 54-55. Ms. Grey testified that she witnessed the fight in real time through the security cameras airing in the booth, but she did not intervene because such altercations were frequent and protocol dictated that she not leave the booth. *Id*. at 56-59. She observed video depicting White, Handy, and a crowd of bystanders exiting the building and, soon thereafter, she heard gunshots. Moments later she saw a hooded male return through the lobby while carrying a pistol. *Id*. at 66-69.

Security footage from cameras located both in the lobby and outside of the apartment building was recovered by Detective Ohmarr Jenkins and turned over to Detective Thorsten Lucke, who created a compilation of the incident. *Id*. at 91-93. The footage was played and narrated by Detective Lucke during Appellant's bench trial. The video depicted the initial altercation, the men exiting the building, and then multiple flashes of a muzzle. *Id*. at 95-96. Surveillance footage also depicted a male, later identified as Appellant, re-entering the lobby with something in his hands as the police arrived. *Id*. at 98.

An autopsy of White was performed by Dr. Daniel Brown. His report, the decedent's hospital records, and the investigative reports were

subsequently reviewed by Dr. Lindsay Simon, an expert in forensic pathology. *Id*. at 134-40. Dr. Simon testified that the manner of White's death was a homicide, and the cause of death was multiple gunshot wounds. *Id*. at 135. Dr. Simon concluded that he had been shot six times in the back. *Id*. at 137-40.

Appellant was arrested and charged with murder and related weapons offenses in connection with these events. He was also charged at a separate docket number with firearm offenses charges associated with a different gun that was found on his person at the time of his arrest. At a bench trial held on March 2, 2020, the trial court found Appellant guilty of third-degree murder, PIC, and the related weapons charges. On August 28, 2020, Appellant pled guilty at the second docket number to the weapons charges arising from his arrest. That same day, Appellant was sentenced to an aggregate term of twenty to forty years of imprisonment on the third-degree murder, PIC, and weapons convictions related to the shooting on February 28, 2018. The court also sentenced him to a consecutive term of two to four years of imprisonment for the firearms violations associated with his arrest. Appellant filed a timely post-sentence motion, which the trial court denied.

Appellant filed two timely notices of appeal.[2] The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Appellant timely complied. Appellant also filed an application to consolidate the two separate cases on appeal, which this Court granted. Thereafter, the trial court authored its Pa.R.A.P. 1925(a) opinion.

Appellant presents the following questions for our review:

1. Whether the adjudication of guilt for murder in the third [-]degree and PIC is based upon insufficient evidence where the Commonwealth failed to prove beyond a reasonable doubt that the Appellant possessed the requisite mental state for third[-]degree murder and where the Commonwealth did not prove beyond a reasonable doubt that the Appellant was not justified in using lethal force to save the life of a third party that the victim was stabbing?

2. Whether the adjudication of guilt for third[-]degree murder and PIC . . . is against the weight of the evidence and shocking to one's sense of justice where the evidence in the case overwhelmingly established that the Appellant intervened in a vicious stabbing of a third party by the decedent and where the Appellant reasonably believed, or unreasonably believed, that he was lawfully entitled to utilize lethal force to prevent the murder of another in progress?

3. Whether the [trial] court abused its discretion at sentencing creating a substantial question that the sentence is inappropriate because it is contrary to the norms underlying the Sentencing Code where:

   (a) The court sentenced the Appellant . . . to a consecutive sentence of 2-4 years when the Court's

_____

[2] Appellant complied with **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), which construes Pa.R.A.P. 341 as requiring an appellant to filed separate notices of appeal when issues arise on more than one docket.

reason for sentencing the Appellant to a consecutive sentence was based upon Appellant's Lock and Track prison information showing that the Appellant had incurred seven misconduct infractions in the county prison since being arrested on 3/7/18 when the incidents were for relatively minor infractions for fighting with other inmates, disturbing others on the cell block and evidence of possession of a controlled substance where there were no weapons attributed to the Appellant and where there were no injuries sustained by others due to the Appellant's behavior.

(b)    The court failed to give the mitigation the proper weight when the mitigation consisted of the Appellant having saved a third person from a homicide in progress, where the Appellant exhibited profound and sincere remorse, and where there was evidence of family dysfunction, childhood trauma, substance abuse, educational deficits, among other things that were pointed out in the pre-sentence investigation reports.

(c)    The court sentenced the Appellant to consecutive sentences when, in light of the many mitigating circumstances, the imposition of an inappropriate consecutive sentence was contrary to the norms underlying the Sentencing Code.

(d)    The court sentenced the Appellant to the maximum allowable sentence for third[-]degree murder when the existence of substantial mitigation warranted the Appellant not being treated as the equivalent of the usual third[-]degree murder defendant who typically in Philadelphia is sentenced to the maximum allowable sentence of 20-40 years.

Appellant's brief at 6-7 (unnecessary capitalization omitted). We have re-ordered the issues for ease of disposition.

We begin with Appellant's claim that the evidence was insufficient to support his third-degree murder and PIC convictions, mindful of the following:

- 7 -

Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Williams*, 176 A.3d 298, 305-06 (Pa.Super. 2017) (cleaned up).

We turn first to Appellant's third-degree murder conviction. Third-degree murder is "[a]ll other kinds of murder" besides first and second-degree murder. 18 Pa.C.S. § 2302(c). First-degree murder is an intentional killing; second-degree murder is murder "committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S. §2302(b). Our Supreme Court has stated that "[t]o convict a defendant of third-degree murder, as provided in Section 2502(c), the Commonwealth need only prove the defendant killed another person with malice aforethought." *Commonwealth v. Santos*, 876 A.2d 360, 363 (Pa. 2005). The term malice "comprehends not only a particular ill-will, but every case where there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular

person may not be intended to be injured." ***Commonwealth v. Parker***, 168 A.3d 161, 168 (Pa. 2017).

Appellant argues there was insufficient evidence to sustain his third-degree murder conviction as the "Commonwealth failed to prove beyond a reasonable doubt that the Appellant possessed the requisite mental state for third[-]degree murder[.]" Appellant's brief at 19 (unnecessary capitalization omitted). Appellant further argues that the "Commonwealth did not prove beyond a reasonable doubt that the Appellant was not justified in using lethal force to save the life of a third party that the victim was stabbing." ***Id***. In essence, he argues that the inferences drawn by the factfinder were unreasonable and did not support the findings of guilt.

Our review of the certified record reveals that Appellant acknowledged at trial that he shot White multiple times as White was running away from Appellant and Handy, an admission that was further supported by the video surveillance footage depicting the incident. N.T. Trial, 3/3/20, at 69. White died of those gunshot wounds. Viewing the testimony in the light most favorable to the Commonwealth, the evidence established that Appellant killed White. The only remaining question is whether he did so with the requisite malice or whether his actions were justifiably undertaken in defense of another, *i.e.*, Handy.

Appellant contests the inference drawn by the factfinder that he possessed the requisite malice for third-degree murder. Appellant's brief at

29. He argues that the court's inference of malice was based upon the number of shots fired at White, their direction of travel, and the faulty assumption that White was retreating when Appellant shot him. Appellant argues that "the facts, as well as White's behavior[,] do not really support the inference that White's violence had ceased and that he was in retreat." *Id*. He argues that he reacted "instinctively" to circumstances that White had set in motion, "with no thought other than saving Handy's life and ensuring that White did not continue his murderous rampage on Handy and/or attack [Appellant]." *Id*. at 30. In light of these circumstances, Appellant asserts that the inferences drawn by the factfinder were unreasonable and his third-degree murder conviction should be reversed.

The law is well settled that "malice may be inferred from the use of a deadly weapon upon a vital part of the body." ***Commonwealth v. Hauser***, 18 A.3d 1128, 1133 (Pa. 2011). Dr. Simon testified that the decedent sustained six gunshot wounds, and at least one bullet struck the decedent's heart resulting in internal bleeding. ***See*** N.T., 3/2/20, at 136. Thus, malice may be inferred from Appellant's use of a deadly weapon upon White's vital organs alone. In addition, the factfinder could reasonably infer malice from unrefuted evidence that Appellant did not retreat, but rather, chased after the fleeing White and continued to fire his weapon at White's back. Thus, on the record before us, there was sufficient evidence that Appellant killed White with malice aforethought.

At trial, Appellant attempted to establish the justification of imperfect self-defense or the protection of others to negate malice and his criminal liability for third-degree murder. He maintains that he reasonably concluded that White was not running away as he circled the car and did not drop his knife. Appellant's brief at 26.

Under Pennsylvania law, the justification of "defense of others" is largely dictated by 18 Pa.C.S. § 505, which provides the justification of self-defense: "The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." The statute for the defense of others, 18 Pa.C.S. § 506, incorporates that standard by reference:

> (a)    General rule. – The use of force upon or toward the person of another is justifiable to protect a third person when:
>
>     (1)    the actor would be justified under section 505 (relating to the use of force in self-protection) in using such force to protect himself against the injury he believes to be threatened to the person whom he seeks to protect;
>
>     (2)    under the circumstances as the actor believes them to be, the person whom he seeks to protect would be justified in using such protective force; and
>
>     (3)    the actor believes that his intervention is necessary for the protection of such other person.

18 Pa.C.S. § 506. Additionally,

> [t]he Commonwealth sustains its burden [of disproving self-defense or defense of others] if it proves any of the following: that

the slayer was not free from fault in provoking or continuing the difficulty which resulted in the slaying; that the slayer did not reasonably believe that [he or another] was in imminent danger of death or great bodily harm, and that it was **necessary** to kill in order to save [himself or another] therefrom; or that the slayer violated a duty to retreat or avoid the danger.

*Commonwealth v. Sepulveda*, 55 A.3d 1108, 1124 (Pa. 2012) (emphasis added). Finally, the defense of "imperfect self-defense," which reduces the crime of murder to voluntary manslaughter, exists where the defendant actually but unreasonably believed that deadly force was necessary to protect himself or another against the use of unlawful force. *Commonwealth v. Truong*, 36 A.3d 592, 599 (Pa.Super. 2012).

The trial court, sitting as factfinder, rejected both Appellant's claim that he acted in defense of another and his assertion of imperfect defense of others. According to the factfinder, the video surveillance showed White standing over the motionless body of Handy. Two shots were fired by Appellant, causing White to flee. Appellant pursued him, running past Handy's body as he continued to fire his weapon at White's retreating back. He emptied his weapon of seven rounds, six of which struck White from behind. The trial court found that Appellant made a conscious decision to keep chasing and shooting at White for the purpose of killing him after Handy was no longer in immediate danger, thus rejecting Appellant's claim that he was concerned that White could have turned around and resumed his attack on his prone victim. Trial Court Opinion, 11/12/20, at 9. Although Appellant's initial use of force may have been justified, it was within the purview of the factfinder to

conclude that Appellant no longer believed, reasonably or otherwise, that the continued use of deadly force was necessary.

Furthermore, Appellant confessed that, immediately after the shooting, he ran back inside the apartment building with his hood up, fled down the staircase to exit the building, and left the neighborhood without checking on the injured Handy. *Id*. at 70. Appellant testified, "I know what I did, I was in the wrong, so I was getting away." *Id*. at 79. He disposed of the murder weapon by trading it for another firearm, conduct that is inconsistent with a man who believed that his actions were justified. *Id*. at 79. Contrary to Appellant's claim, the evidence supported the trial court's finding that the Commonwealth proved that Appellant did not act in defense of another, either reasonably or unreasonably, and Appellant's conviction of murder in the third degree is well-supported by the record. *Accord Commonwealth v. Yanoff*, 690 A.2d 260, 265 (Pa.Super. 1997) (finding no merit to claim that Commonwealth failed to disprove justification defense where the defendant shot the victim in the back while the victim was running away).

Appellant also contends that because he was "justified in using deadly force in order to protect Handy or himself, then he should not have been convicted of PIC because he did not intend to employ his firearm criminally." *Id*. at 28. To convict an individual for PIC, the Commonwealth must prove: "(1) possession of an object that is an instrument of crime (2) intent to use

the object for a criminal purpose." ***Commonwealth v. Brockington***, 230 A.3d 1209, 1213 (Pa.Super. 2020).

Based upon the foregoing discussion, we have already concluded that the record supports the factfinder's determination that Appellant was not justified in using deadly force in defense of himself or Handy. There is no dispute that Appellant had a firearm in his possession that he used to commit the murder of White. The factfinder reasonably concluded from this evidence that Appellant possessed the firearm with the intent to use it for a criminal purpose. No relief is due.

Next, Appellant argues that the trial court's determination that Appellant is guilty of third-degree murder is against the weight of the evidence and shocks one's sense of justice. Appellant's brief at 19, 26-28. Appellant contends that:

> the evidence in the case overwhelmingly established that the Appellant intervened in a vicious stabbing of a third party by the victim, where the victim would not drop the knife and would not go down and where the Appellant reasonably believed, or unreasonably believed, that it was necessary to shoot the victim repeatedly to prevent him from circling the parked vehicle he was running around to resume the attack[.]

Appellant's brief at 19. Further, Appellant contends that he did not harbor the mindset for third-degree murder, but rather "it was his justified regard for the value of Handy's human life that compelled the Appellant to use deadly force to save Handy's life." ***Id***. at 27-28. Appellant argues that while "a reasonable factfinder" could have concluded that it was unreasonable for him to fire

- 14 -

continuously at White, such a finding should have resulted in a conviction of voluntary manslaughter. He contends that the court's decision to find him guilty of third-degree murder shocks one's sense of justice and should be reversed. *Id*. at 28.

The following legal principles govern our review. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa.Super. 2015) (quoting *Commonwealth v. Johnson*, 668 A.2d 97, 101 (Pa. 1995)). This Court's review of a challenge to the weight of the evidence

> is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013) (cleaned up). This standard applies even when the trial judge was also the finder of fact. *See Commonwealth v. Konias*, 136 A.3d, 1014, 1022 (Pa.Super. 2016).

Appellant's weight of the evidence claim is largely a reiteration of the arguments he advanced in his challenge to the sufficiency of the evidence. Furthermore, Appellant's claim for relief is predicated upon facts that are not supported by the certified record. Contrary to Appellant's assertions, there is no evidence that White was poised to stab Handy again as he lay motionless

on the ground. *See* Appellant's brief at 8. Furthermore, the factfinder rejected the notion that as White fled, he ran around a vehicle as if to circle back to harm Appellant and Handy. The court found the attack had ended, White was fleeing, yet Appellant continued to shoot at his back. The trial court concluded that its conviction "should not shock a reasonable jurist's conscience." Trial Court Opinion, 11/12/20, at 11. The certified record reveals no indication that the trial court's failure to conclude that the verdict shocked its conscience was the product of an error of law, was manifestly unreasonable, or was "a result of partiality, prejudice, bias or ill-will." *Clay*, *supra* at 1055 (internal quotation marks omitted). As such, we have no basis to disturb the trial court's finding. No relief is due on this claim.

In his final issue, Appellant seeks to challenge the discretionary aspects of his sentence. The following legal principles govern our consideration of his claim:

> An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:
>
> > (1) Whether appellant has filed a timely notice of appeal;(2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentenced appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Lucky*, 229 A.3d 657, 663-64 (Pa.Super. 2020) (internal quotation marks omitted).

Appellant filed timely notices of appeal and preserved the sentencing issue in a timely post-sentence motion seeking reconsideration of his sentence. Appellant's brief contained a statement of reasons relied upon for his challenge to the discretionary aspects of his sentence as required by Pa.R.A.P. 2119(f). **See** Appellant's brief at 21. The Commonwealth contends that Appellant failed to present a substantial question. **See** Commonwealth's brief at 14-15.

We begin with the legal principles applicable for evaluating whether a substantial question is presented. A substantial question exists "where an appellant advances a colorable argument that the trial judge's actions were: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Hornaman*, 920 A.2d 1282, 1284 (Pa.Super. 2007) (quoting *Commonwealth v. Andrews*, 720 A.2d 764, 767 (Pa.Super. 1998)). We determine whether a substantial question exists on a case-by-case basis. *Commonwealth v. Anderson*, 830 A.2d 1013, 1018 (Pa.Super. 2003).

Appellant maintains that a substantial question exists because his "sentence is manifestly unreasonable and excessive under the circumstances of the case and contrary to the norms underlying the Sentencing Code and

because the [sentencing court] failed to give due consideration to the Appellant's unfortunate history and to the conditions and choices presented to him when he made the decision to act to save the life of another human being." **See** Appellant's brief at 21. Since Appellant presents a colorable claim that the sentencing court failed to give due consideration to various mitigating factors, we find that he has presented a substantial question. **See Commonwealth v. Dodge**, 77 A.3d 1263, 1272 (Pa.Super. 2013) (holding that sentencing court's failure to consider mitigating factors when constructing its sentence raises a substantial question). Thus, we turn to the merits of his sentencing claim.

The following principles inform our review. When evaluating the merits of a discretionary sentencing claim, "appellate courts afford the sentencing court great deference, as it is the sentencing court that is in the best position to view the defendant's character, displays of remorse, defiance, or indifference, and the overall effect and nature of the crime." **Commonwealth v. Edwards**, 194 A.3d 625, 637 (Pa.Super. 2018) (internal quotation marks omitted). "We cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court." **Commonwealth v. Macias**, 968 A.2d 773, 778 (Pa.Super. 2009). Hence, "[w]e analyze the sentencing court's decision under an abuse of discretion standard." **Commonwealth v. Zeigler**, 112 A.3d 656, 661 (Pa.Super. 2015). This Court has previously held that:

> [A]n abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Antidormi*, 84 A.3d 736, 760 (Pa.Super. 2014).

"When imposing [a] sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation." *Commonwealth v. DiClaudio*, 210 A.3d 1070, 1075 (Pa.Super. 2019) (citing *Antidormi*, *supra* at 760-61) (internal citations and quotation marks omitted). According to the sentencing guidelines, the sentence "should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b).

Appellant contends that his "sentence is manifestly unreasonable because the sentencing court did not give due weight to the provocation of White, the life the Appellant saved, and the deficits the Appellant faced as he was growing up." Appellant's brief at 32. Further, Appellant claims that the sentencing court "gave inappropriate weight [during sentencing] to minor prison infractions that presented no danger to the lives of any prisoner or prison employees." *Id*.

Appellant's contention that the trial court failed to give due consideration to mitigating factors when imposing the maximum sentence is refuted by the record. Prior to imposing sentence, the trial court stated:

> Mr. Allen, I have to take into account everything that I previous[ly] said as well as what I learned here in the courtroom today. This hearing is difficult. It's difficult to see the pain on both families as a result of you shooting and killing Mr. Emmanuel White.
>
> . . . .
>
> I was looking for answers when I came in here today, because I did look at your age. You were young when you did this, and the law recognizes, recently, that it takes a while for brains to mature. But when I looked at what you have done with your life, I look at everything that happened in your juvenile placements.
>
> Okay, if there's an issue at one placement, I'm willing to accept that it's the placement and it's not you. But, that's not your history. There are issues everywhere you go and have gone. . . . This is not your parents' fault.
>
> . . . .
>
> So, I look at your record and I see someone, sir, in spite of all of the interventions, in spite of the love that you received from your family, you didn't get it. So when I have to do a balancing, in your case, the need to protect society outweighs that lower end that [counsel], in essence, was asking me for. I've considered it all. I have to make certain that you learn what you need to learn while you're in prison.

N.T. Sentencing, 8/28/20, at 74-77.

In its opinion, the court further explained its reasoning for imposing Appellant's sentence.

> At the time of the offenses, Appellant had a prior record score of [two]. With an offense gravity score ("OGS") of fourteen, and in applying a deadly weapon enhancement for a weapon used to commit the offense . . . [t]his court's sentences for third-degree murder (twenty to forty years imprisonment), [possession of a

firearm by a prohibited person] (one to two years imprisonment), and both [convictions for firearms not to be carried without a license] (two to four years of imprisonment each) fell within the standard range of sentences for each charge.

In imposing its sentence, this court considered every factor required under the sentencing code and imposed a sentence that was not only necessary for the protection of the public, but one that also reflected the significant threat the Appellant posed to the community. This court reviewed the Appellant's presentence and mental health reports, which revealed that he had a juvenile record of three arrests and was previously adjudicated delinquent for two counts of robbery at age 14. . . .

From his first contact with the justice system as a juvenile, the Appellant's behavior reflected a serious refusal to conform his behavior to the norms of society at large. The Appellant participated in riots during his commitment . . . and was verbally abusive during prior court hearings. . . . Progress summaries from his juvenile detention note that the Appellant was prone to violence, participated in group assaults, and maintained an association with gangs such as the JET Boyz Group.

These issues continued into his adult incarceration, where Appellant committed no less than seven infractions between June 24, 2018 and March 22, 2020, including two for fighting, one for possession of a controlled substance, and multiple violations for violating rules, refusal to comply with commands, and disrespecting staff members.

Despite the Appellant's characterization of such incidents as occurring early in his incarceration, this court feels that, after review of his record as a whole, the Appellant's continued misconduct reflects a pattern of anti-social behavior that has been observed in each one of his encounters with the justice system since his first juvenile placement in 2014.

Trial Court Opinion, 11/12/20, at 13-14 (citations and unnecessary capitalization omitted).

Furthermore, the trial court reviewed a presentence investigation report ("PSI"). As this Court has previously stated, "where the sentencing judge had

the benefit of a [PSI] report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Commonwealth v. Finnecy***, 135 A.3d 1028, 1038 (Pa.Super. 2016). By all indications, the trial court weighed the mitigating factors presented by Appellant in fashioning his sentence.

Appellant argues further that the trial court abused its discretion by imposing a consecutive sentence of two to four years of imprisonment for the weapons charges arising from his arrest.[3] Appellant's brief at 6-7. Appellant failed to develop this issue in his brief, and thus, it is waived. ***See Commonwealth v. Roche***, 153 A.3d 1063, 1073 (Pa.Super. 2017 (finding sufficiency issue waived for lack of development in appellate brief). In any event, "Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." ***Commonwealth v. Austin***, 66 A.3d 798, 808 (Pa.Super. 2013); ***see also*** 42 Pa.C.S. §9721(a) (providing that the court may impose sentences consecutively or concurrently).

The sentencing judge did not impose consecutive sentences on the weapons offenses related to No. 395-2019, choosing to run them concurrent

_____

[3] Generally, a claim that the court abused its discretion in imposing consecutive sentences does not present a substantial question. ***See Commonwealth v. Austin***, 66 A.3d 798, 808 (Pa.Super. 2013)

to the twenty-to-forty-year standard range sentence for third-degree murder and impose no further penalty on the PIC conviction. Instead, the court imposed a standard range consecutive two-to-four-year sentence of imprisonment for one weapons offense at No. 2410-2018, and no further penalty on the remaining weapons charges, and it did so because Appellant obtained another gun after killing someone. **See** N.T., Sentencing, 8/28/20, at 78. On the record before us, we find no abuse of discretion in sentencing.

For the foregoing reasons, we find the evidence sufficient to support Appellant's third-degree murder and PIC convictions and that the verdict was not against the weight of the evidence. Furthermore, we find no abuse of discretion on the part of the trial court in the sentence imposed. Consequently, we affirm judgment of sentence.

Judgment of sentence affirmed. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 7/28/2021*