J-A23042-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| AARON LOUIS COLLINS | : | |
| | : | |
| Appellant | : | No. 327 WDA 2025 |

Appeal from the Judgment of Sentence Entered February 6, 2025
In the Court of Common Pleas of Fayette County Criminal Division at
No(s):  CP-26-CR-0001489-2018

BEFORE:  PANELLA, P.J.E., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED:  January 15, 2026**

Appellant, Aaron Louis Collins, appeals from the judgment of sentence of 27 months' to six years' incarceration, imposed after a jury convicted him of failure to comply with registration requirements, 18 Pa.C.S. § 4915.1(a)(1). After careful review of Appellant's issues, we affirm.

We briefly summarize the pertinent facts and procedural history of Appellant's case, as follows.  Based on prior convictions for offenses that occurred in 1996, Appellant is designated as a sexually violent predator (SVP) and is required to comply with the registration requirements of the Sex Offender Registration and Notification Act (SORNA), 42 Pa.C.S. §§ 9799.51-9799.75.  Pursuant to his SORNA registration requirements, "[a]t least once every year, Appellant must register as a sex offender at the State Police barracks.  If he changes his address, he must appear at the barracks and provide notification of the address change."  ***Commonwealth v. Collins***, No.

1053 WDA 2020, unpublished memorandum at 1 (Pa. Super. filed June 10, 2021). In 2018, Appellant "registered his address with the Pennsylvania State Police as 51 Dunlap Street, Uniontown, Pennsylvania[,]" where his mother, Gloria Collins, lived. Trial Court Opinion (TCO), 5/16/25, at 1. However, following an investigation by the Pennsylvania State Police, it was determined that Appellant did not reside at that address but, instead, he was living at 810 Springfield Pike, Connellsville, Pennsylvania. Because Appellant had not properly registered his address, he was charged with an offense under section 4915.1(a)(1).

Appellant's case initially proceeded to a jury trial on June 4, 2019, after which he was convicted and sentenced to 21 to 42 months' incarceration. He filed a timely appeal, but it was dismissed based on his counsel's failure to comply with the Rules of Appellate Procedure. Appellant thereafter filed a petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, seeking the reinstatement of his appeal rights based on his counsel's ineffectiveness. That petition was granted, and his direct appeal rights were reinstated. Appellant filed a direct appeal *nunc pro tunc*, and this Court affirmed his judgment of sentence on June 10, 2021. **See Collins**, **supra**. Our Supreme Court denied his subsequent petition for allowance of appeal on October 26, 2021. **See Commonwealth v. Collins**, 265 A.3d 1277 (Pa. 2021).

On November 15, 2021, Appellant filed a timely PCRA petition, alleging the ineffective assistance of his trial counsel. After a hearing was conducted,

the court granted Appellant's petition on August 18, 2022, finding that Appellant's counsel was ineffective. **See** PCRA Court Opinion and Order (PCOO), 8/8/22, at 8. Accordingly, the court vacated Appellant's judgment of sentence and granted him a new trial.

Appellant's second jury trial was held on January 7, 2025, at which Appellant was permitted to represent himself (with standby counsel), after the court conducted a **Grazier** hearing.[1] At the close of trial, Appellant was again convicted of the section 4915.1(a)(1) offense. On February 6, 2025, the court sentenced him to 27 months' to six years' incarceration. He filed a timely post-sentence motion, arguing that the jury's verdict was contrary to the weight of the evidence presented at trial. The court denied that motion on February 20, 2025. Appellant then filed a timely notice of appeal, and he and the court complied with Pa.R.A.P. 1925.

Herein, Appellant states six issues for our review:

1. Whether Appellant completed his initial sentence of twenty-one (21) to forty-two (42) months on or about July 18, 2022, making him ineligible for relief under the []PCRA[] when the PCRA court issued its opinion vacating the initial sentence on August 18, 2022?

2. Whether the court violated Appellant's right to equal protection under the United States and Pennsylvania Constitutions, when … Appellant is a person of color and the court[,] through its process of reducing the size of the potential jury pool[,] excluded the only person of color in the potential jury pool?

---

[1] **See Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

3. Whether the court erred in permitting the Commonwealth to enter the testimony of Appellant's deceased mother, Gloria Collins, on the record[,] when trial counsel in the first trial was found to be ineffective and there was concern that [Ms.] Collins might not be competent to testify?

4. Whether the jury's verdict was against the weight of the evidence when the Commonwealth based its case on statements made by [Ms.] Collins[,] who had a history of confusion and disorientation?

5. Whether the court abused its discretion when it sentenced Appellant to a sentence greater than his original sentence in this case?

6. Whether at the time of Appellant's alleged violation of his reporting requirements in 2018, those requirements were unconstitutional under the federal and Pennsylvania state Constitutions pursuant to *Commonwealth v. Muniz*, 164 A.3d 1189 [(Pa. 2017)]?

Appellant's Brief at 3 (unnecessary capitalization omitted).

In Appellant's first issue, he argues that we must vacate his judgment of sentence, and reverse his instant conviction, because the PCRA court lacked statutory authority to issue its August 18, 2022 order vacating his original judgment of sentence and directing that he be retried. Appellant points out that, to be eligible for relief under the PCRA, a petitioner must be "currently serving a sentence of imprisonment, probation or parole for the crime." 42 Pa.C.S. § 9543(a)(1)(i); *see also Commonwealth v. McLaughlin*, 240 A.3d 980, 982-83 (Pa. Super. 2020) ("It is … well-settled that relief is unavailable under the PCRA unless the defendant is 'currently serving a sentence of imprisonment, probation or parole for the crime.'") (quoting 42 Pa.C.S. § 9543(b)(1)(i)). Here, Appellant completed serving his original sentence of 21 to 42 months' incarceration on July 18, 2022. Therefore, he contends that

"the PCRA [c]ourt did not have jurisdiction" on August 18, 2022, to issue the order vacating his original judgment of sentence and awarding him a new trial. Appellant's Brief at 11.

Because Appellant did not appeal from the court's August 18, 2022 order, or raise this claim at any point prior to his retrial, the trial court concluded — and the Commonwealth agrees — that his claim is waived. **See** TCO at 3; Commonwealth's Brief at 13. We also agree. Although Appellant characterizes the eligibility provisions of section 9543(a) as "jurisdictional requirements[,]" which would be non-waivable,[2] he cites no legal authority to support this position. To the contrary, our Court has stated:

> The plain language of section 9543 does not mention the *jurisdiction* of the PCRA court, but instead sets forth the eligibility requirements a petitioner must meet in order to obtain post-conviction relief. Notably, the language, "to be eligible for relief," implicates only the petitioner's ability to obtain a remedy through post-conviction proceedings, not the jurisdiction of the PCRA court to act on a petition. Moreover, reading the PCRA statute as a whole, as we must, supports our interpretation of the language of section 9543. Specifically, in drafting the PCRA, the General Assembly included 42 Pa.C.S. § 9545, a separate provision addressing "Jurisdiction and proceedings." Had the General Assembly intended the eligibility requirements of section 9543 to be jurisdictional prerequisites, it would have included that provision within section 9545.

***Commonwealth v. Fields***, 197 A.3d 1217, 1222 (Pa. Super. 2018) (emphasis in original; footnote omitted). Thus, because the eligibility

---

[2] ***See In re J.M.Y.***, 218 A.3d 404, 415 (Pa. 2019) (stating that "the question of the subject matter of a court is nonwaivable, and, indeed, [an appellate c]ourt is empowered to raise the issue *sua sponte*").

- 5 -

requirements of section 9543 are not jurisdictional, we conclude that Appellant waived his claim that the PCRA court lacked the authority to vacate his original judgment of sentence and order his retrial when he failed to appeal from the court's August 18, 2022 order granting him that relief. Consequently, Appellant's first issue is meritless.

Next, Appellant contends that the trial court violated his equal protection rights under the United States and Pennsylvania Constitutions by "reducing the size of the potential jury pool, which effectively excluded the only person of color in the jury pool from consideration." Appellant's Brief at 13. Appellant explains that there was one "person of color … called in the courtroom" as a potential juror, however "her badge number was not high enough on the jury list to be considered for the jury, but only as an alternate." *Id.* When Appellant objected, the following exchange occurred:

> THE COURT: All right. The record should reflect that the entire jury panel has been escorted to the hallway. [Appellant], what is your specific objection?
>
> [Appellant]: Juror 248 is the only one that um, by the standards of anyone else in, in here ---
>
> [Standby Defense Counsel]: Only minority.
>
> [Appellant]: She is the only minority here and me being a minority[,] I would feel more comfortable with having one on my jury than not. You made her … an alternate.
>
> THE COURT: Well, I didn't make her an alternate. She is one of four that could potentially be selected as an alternate.
>
> [Appellant]: Yes, ma'am.
>
> THE COURT: All right. Mr. Shultz?

[The Commonwealth]: Your Honor, I don't believe this is a proper ***Batson***[3] [c]hallenge and I will admit this is my first time being a party in the courtroom for a ***Batson*** [c]hallenge. If my memory serves, a ***Batson*** [c]hallenge is appropriate in addressing when the Commonwealth or either side strikes a member of a particular race for solely racial grounds. At this point[,] I've made no strikes. At this point[,] this is a panel that has been impaneled on the peers of Fayette County. With that being said[,] I don't believe a ***Batson*** [c]hallenge is appropriate.

THE COURT: All right. And I agree, Mr. Shultz. I am denying the challenge at this time and we will proceed.

N.T. Trial, 1/7/25, at 26-27.

Appellant now claims that, "[a]lthough neither the [t]rial [c]ourt nor the Commonwealth acted with any specific intent to racially discriminate, the application of the [t]rial [c]ourt's process of reducing the size of the potential jury pool had a racially discriminatory effect that prejudiced … Appellant." Appellant's Brief at 13. He argues that the court "could easily have prevented this injustice simply by moving the only perspective [*sic*] juror who was a person of color up the list so she would not be arbitrarily eliminated." ***Id.*** at 14.

Notably, Appellant cites no legal authority to support his contention that the court erred by overruling his objection to Juror 248's being a potential alternate juror. Appellant does not mention ***Batson***, or make any argument

---

[3] ***See Batson v. Kentucky***, 476 U.S. 79 (1986). "In ***Batson***, the [Supreme Court of the United States] held that a prosecutor's challenge to potential jurors solely on the basis of race violates the Equal Protection Clause of the United States Constitution." ***Commonwealth v. Edwards***, 177 A.3d 963, 971 (Pa. Super. 2018) (citation omitted).

that the Supreme Court's holding in that case was violated. Moreover, Appellant concedes that there was no racially-motivated action taken regarding the juror, making **Batson** inapplicable. **See Edwards**, 177 A.3d at 971 (stating that, when a defendant makes a **Batson** challenge during jury selection, he/she must first "make a *prima facie* showing that the circumstances give rise to an inference that the prosecutor struck one or more prospective jurors on account of race").

Additionally, to the extent Appellant is suggesting that the jury pool did not fairly represent the community, he fails to develop any meaningful argument in this regard. As the Commonwealth points out, this Court in **Commonwealth v. Estes**, 851 A.2d 933 (Pa. Super. 2004), stated:

> To establish a *prima facie* violation of the requirement that a jury array fairly represent the community, [a defendant] must show that:
>
> > (1) the group allegedly excluded is a distinctive group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation of the number of such people in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury selection process. "Systematic" means caused by or inherent in the system by which juries were selected. Proof is required of an actual discriminatory practice in the jury selection process, not merely underrepresentation of one particular group. The defendant bears the initial burden of presenting *prima facie* evidence of discrimination in the jury selection process.

*Id.* at 935 (cleaned up). Instantly, Appellant does not acknowledge this test, or make any effort to discuss each prong. Therefore, he has failed to

demonstrate any error occurred in the court's overruling his objection to Juror 248's being listed as a potential alternate juror.

In Appellant's third claim on appeal, he argues that the trial court erred by permitting the Commonwealth to enter into evidence at Appellant's second trial the testimony from the first trial of his mother, Ms. Collins, who had died prior to Appellant's retrial and was therefore unavailable to testify. This Court has explained that,

> [p]ursuant to 42 Pa.C.S.[] § 5917, the former testimony of a witness in a criminal proceeding who has since died is competent evidence admissible in a subsequent trial of the same criminal issue. **See also** Pa.R.E. 804.1. The Supreme Court has held, however, "that in order for a witness's prior testimony to be admissible pursuant to Section 5917, the defendant against whom the testimony is to be admitted at a subsequent proceeding must have been afforded **a full and fair opportunity to cross-examine the witness** at the first proceeding." **Commonwealth v. Chmiel**, … 738 A.2d 406, 417 ([Pa.] 1999) … (emphasis added). In addition, the issues in both proceedings must remain the same "such that the present opponent … had an adequate motive for testing on cross-examination the credibility of the testimony now offered." **Id.** (quoting **Commonwealth v. Velasquez**, … 296 A.2d 768, 770 n.3 ([Pa.] 1972) (internal quotation omitted)).

**Commonwealth v. Strong**, 825 A.2d 658, 662 (Pa. Super. 2003).

Presently, Appellant contends that Ms. Collins' testimony at his first trial should not have been admitted at his second trial, despite her unavailability, because he did not have a full and fair opportunity to cross-examine her. In support, he cites the fact that, in granting him a retrial, the PCRA court found that his trial counsel was ineffective. He also claims that when he objected to the admission of Ms. Collins' prior testimony at his second trial, "the

Commonwealth admitted that the PCRA [c]ourt found previous counsel ineffective for failing to call any witnesses to contest [Ms.] Collins' mental state." Appellant's Brief at 16 (citing N.T. Trial at 19). According to Appellant, the PCRA court's conclusion that his prior counsel was ineffective demonstrates that he did not have a full and fair opportunity to cross-examine Ms. Collins at his first trial and, therefore, her testimony should not have been admitted at his second trial.

Appellant's argument is unconvincing. First, in the PCRA court's decision granting Appellant a new trial, it explicitly stated that Appellant's trial counsel "was ineffective for failing to contact him in prison prior to his trial; to discuss the discovery to be presented in the Commonwealth's case; to provide him the discovery in his case; and, to discuss the strategy so witnesses could have been called." PCOO at 8. Nothing indicates that the PCRA court found that counsel had acted ineffectively in cross-examining Ms. Collins.

Moreover, as the trial court pointed out, when Appellant objected to the admission of Ms. Collins' testimony, he made "no showing whatsoever that [he] was denied the opportunity to cross-examine [her]." TCO at 6. He also fails to explain on appeal any way in which his prior counsel's cross-examination of Ms. Collins was deficient, aside from generally suggesting that counsel should have attacked her mental competency. Even in this regard, however, Appellant makes no attempt to discuss how counsel could have done so. Therefore, he has not demonstrated that he was denied a full and fair opportunity to cross-examine Ms. Collins at his first trial.

Additionally, we also reject Appellant's claim that the Commonwealth admitted his prior counsel was ineffective for failing to call witnesses to challenge Ms. Collins' mental competency. When Appellant objected to the admission of Ms. Collins' testimony at his second trial, the Commonwealth responded:

[The Commonwealth]: I had an opportunity in prepping this trial to thoroughly review [the PCRA court's] decision finding ineffective assistance of counsel. Nowhere in that opinion did I see where he specifically found [prior trial counsel] ineffective for failing to cross[-]examine [Ms.] Collins. What [the court] specifically found [counsel] ineffective for was … the failure to adequately prep[are Appellant] for trial, [and] call any witnesses on his behalf. ***I believe that the appropriate remedy is that [Appellant], who, I believe stated in his [PCRA petition] requesting ineffective assistance of counsel was that he didn't have the opportunity to call any witnesses to contest [Ms.] Collins' mental state.***

N.T. Trial at 19 (emphasis added).

The emphasized language, albeit somewhat confusing, does not, in our view, constitute an admission by the Commonwealth that the PCRA court found Appellant's prior counsel ineffective for failing to call witnesses to contest Ms. Collins' mental state. Instead, it appears the Commonwealth was merely acknowledging that Appellant ***alleged in his petition*** that counsel acted ineffectively in that regard.

In any event, Appellant did not challenge the admission of Ms. Collins' testimony at his second trial on the basis that she was mentally incompetent when she testified at his first trial; instead, he objected on the basis that he was denied a full and fair opportunity to cross-examine her. Again, Appellant's

- 11 -

counsel was not deemed ineffective in cross-examining Ms. Collins, and Appellant did not explain to the trial court, and does not discuss herein, how he was denied a full and fair opportunity to cross-examine her. He also does not discuss how his counsel could have attacked Ms. Collins' mental competency on cross-examination, or what witnesses counsel could have called to do so. As such, Appellant has failed to demonstrate that the court erred in admitting Ms. Collins' testimony from Appellant's first trial at his retrial.

In Appellant's fourth issue, he contends that the jury's verdict was against the weight of the evidence because it was premised solely on Ms. Collins' incredible testimony that Appellant did not reside with her. According to Appellant, "[Ms.] Collins had a history of confusion and disorientation…." Appellant's Brief at 20. Thus, he maintains that the Commonwealth's case rested "on statements made by a witness[] whose mental capacity was questionable at best." *Id.* He insists that, "because there was no reliable evidence confirming that [he] did not reside at 51 Dunlap Street," the trial court abused its discretion in denying his post-sentence motion for a new trial based on a claim that the jury's verdict was contrary to the weight of the evidence. *Id.*

Again, we disagree with Appellant's argument. Initially, we note:

A motion seeking a new trial based on the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to

- 12 -

determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Person*, 325 A.3d 823, 836 (Pa. Super. 2024), *appeal denied*, 334 A.3d 1283 (Pa. 2025) (cleaned up; some formatting altered).

Here, the trial court rejected Appellant's weight claim, finding that, "it was reasonable for the jury to conclude, based on the testimony of [Ms. Collins], which was read into the record, that … Appellant did not reside at 51 Dunlap Street, … and he never lived at that address with his mother." TCO at 6-7. We discern no abuse of discretion in the court's decision. Although Appellant insists that Ms. Collins' testimony was not credible because she was mentally incompetent, the Commonwealth correctly points out that

> there was absolutely no evidence presented during the trial that [Ms.] Collins had any form of impairment to her mental faculties.

- 13 -

Appellant chose not to testify [at] his trial and additionally chose not to present any witnesses on his behalf. As such, his contention that [Ms.] Collins had a history of disorientation and confusion is wholly unsupported by the record.

Commonwealth's Brief at 18. Moreover, the Commonwealth also points out that other evidence corroborated Ms. Collins' testimony that Appellant did not live with her, including the testimony of Detective Jamie Holland "that he was invited into 51 Dunlap Street by [Ms.] Collins, and … there was no evidence [that] an adult male resided at the address." *Id.* at 19. Given this record, the court did not abuse its discretion in denying Appellant's weight-of-the-evidence claim.

Next, Appellant argues that the trial court abused its discretion by imposing a lengthier sentence after his retrial than his original sentence of 21 to 42 months' incarceration. In support, Appellant relies on the following language from this Court's decision in *Commonwealth v. Hernandez*, 783 A.2d 784 (Pa. Super 2001):

> Where a subsequent sentence imposes a greater penalty than previously was imposed, a presumption of vindictiveness attaches. *Commonwealth v. Campion*, … 672 A.2d 1328 ([Pa. Super.] 1996). [W]henever a judge imposes a more severe sentence upon a defendant … the reasons for doing so must affirmatively appear. *Id.* … at 1333[ (quoting *North Carolina v. Pearce*, 395 U.S. 711, 725-26 … (1969)[)]. In order to overcome the presumption of vindictiveness, the sentencing court's reasons must be based upon objective information which justifies the increased sentence. *Id.*

*Id.* at 786.

Instantly, Appellant contends that "[t]he [t]rial [c]ourt provided no reason why the sentence it imposed was greater than the previous sentence

- 14 -

of twenty-one (21) months to forty-two (42) months." Appellant's Brief at 21. Thus, he maintains that "[t]he [t]rial [c]ourt's imposition of a greater sentence than the previous sentence in this case constitutes a presumption of vindictiveness, and the [t]rial [c]ourt's failure to justify the increased sentence constitutes an abuse of discretion." *Id.*

Initially, "[t]his Court has held that challenges to the length of the sentence following retrial citing judicial vindictiveness implicate a discretionary aspect of the sentencing process." ***Commonwealth v. Tapp***, 997 A.2d 1201, 1202-03 (citing ***Commonwealth v. Robinson***, 931 A.2d 15, 20 (Pa. Super. 2007)). "[I]ssues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived." ***Commonwealth v. Griffin***, 65 A.3d 932, 936 (Pa. Super. 2013) (citation omitted). Here, Appellant did not file a post-sentence motion raising this sentencing challenge, and he does not cite to where he raised it orally before the sentencing court. Therefore, it is waived.

In any event, even if not waived, no relief would be due. This Court has held that,

[w]here, as here, the defendant is sentenced on retrial by a judge different from the one who imposed sentence after the first trial, the presumption of vindictiveness established by ***Pearce*** does not apply. ***See*** [***Texas v.***] ***McCullough***, [475 U.S. 134, 138 (1986)].... Although the defendant may seek to establish vindictiveness by affirmative evidence, he must bear the burdens

- 15 -

of production and persuasion on that issue and prove vindictiveness as a matter of fact.

*Tapp*, 997 A.2d at 1205.

In this case, a different judge sentenced Appellant after his retrial than the judge who imposed his original sentence. As such, no such presumption of vindictiveness applies. Appellant has failed to produce any evidence of vindictiveness, or even point to anything in the record that would suggest the same. Thus, his sentencing claim would necessarily fail, even if it were not waived for our review. *See id.* (concluding that, because Tapp was sentenced after retrial by a different judge than that who imposed his first sentence, and he "failed to adduce any evidence on [the issue of vindictiveness], his claim must necessarily fail").

Finally, Appellant challenges the constitutionality of his SORNA reporting requirements. He argues that, "initially[,] he had no reporting requirement until the passage of … []SORNA[], which retroactively imposed an annual reporting requirement upon him." Appellant's Brief at 22. Appellant points out that, "[o]n July 19, 2017, the Pennsylvania Supreme Court held in … *Muniz*: '[W]e have concluded SORNA's registration provisions violate the federal clause, we hold they are also unconstitutional under the state clause.'" *Id.* (quoting *Muniz*, 164 A.3d at 1223). According to Appellant, "[s]ince the Pennsylvania Supreme Court has found SORNA's reporting requirements to be unconstitutional, Appellant should have never been compelled to report his address to the Pennsylvania State Police, and this entire case should have been dismissed." *Id.*

Appellant's argument is meritless. In *Muniz*, our Supreme Court held "that SORNA's registration requirements constituted punishment and their retroactive application constituted a violation of the constitutional prohibition against *ex post facto* laws." *Commonwealth v. Lacombe*, 234 A.3d 602, 615 (Pa. 2020) (citations omitted). After *Muniz*,

> the General Assembly passed Act 10 of 2018, which divided SORNA into two subchapters. Subchapter H is based on the original SORNA statute and is applicable to offenders … who committed their offenses after the December 20, 2012 effective date of SORNA; Subchapter I is applicable to offenders who committed their offenses prior to the effective date of SORNA and to whom the *Muniz* decision directly applied. … The General Assembly later passed Act 29 of 2018, which replaced Act 10….

*Commonwealth v. Butler*, 226 A.3d 972, 981 n.11 (Pa. 2020).

Here, "Appellant was convicted of offenses occurring [on] July 29, 1996, and was designated a[n SVP]." Commonwealth's Brief at 22. Thus, Appellant was one of the individuals to whom *Muniz* directly applied. However, after the passage of Act 10, he was subject to Subchapter I of SORNA. Act 10 went into effect on February 21, 2018. *See Commonwealth v. Farquharson*, No. 637 WDA 2020, unpublished memorandum at 2 (Pa. Super. filed Sept. 8, 2021) (citing Act of Feb. 21, 2018, P.L. 27, No. 10, § 22).[4] The dates on which Appellant falsely reported his address to the State Police, and which led to his conviction under section 4915.1(a)(1), occurred on April 20th, April 26th, and June 15th of 2018. Thus, the version of SORNA found unconstitutional in

---

[4] Pursuant to Pa.R.A.P. 126(b), non-precedential decisions filed after May 1, 2019, may be cited for their persuasive value.

*Muniz* was no longer in effect at the time Appellant committed the violations that led to his conviction. Instead, Subchapter I of SORNA was in effect at that time. In *LaCombe*, our Supreme Court considered the constitutionality of Subchapter I, ultimately holding that it is non-punitive and its retroactive application to individuals, such as Appellant, does not violate *ex post facto* principles and is constitutional. *See Lacombe*, 234 A.3d at 626. Consequently, Appellant's final claim is meritless.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 1/15/2026